Howard W. CURRY and Linda Curry *v.*
William S. THORNSBERRY and Delores Thornsberry

CA 02-583 98 S.W.3d 477

Court of Appeals of Arkansas
Division IV
Opinion delivered February 26, 2003

[Petition for rehearing denied April 2, 2003.]

*Charles A. Brown, P.A.*, for appellants.

*Peel Law Firm, P.A.*, by: *Richard L. Peel* and *Jennifer L. Modersohn*, for appellees.

L ARRY D. VAUGHT, Judge. Appellants Howard Curry and his wife Linda, sued appellees William Thornsberry and his wife Delores, the builder and original seller of appellants' home, for damages allegedly caused by appellees during construction. The trial court directed a verdict against appellants at the close of their proof, finding insufficient evidence of fraudulent concealment so as to toll the statute of limitations. The trial court also awarded appellees a portion of their attorney fees under Ark. Code Ann. § 16-22-308 (1999). Appellants bring this appeal challenging both rulings. We affirm.

Appellee William Thornsberry was the owner-developer and contractor of the Lakehill Subdivision in Pope County[1]. The bill of assurance for the subdivision was filed of record on November

---

[1] Appellee had a partner, Lee Taylor, involved in the development of the subdivision. Title to the property was solely in appellee's name, and Taylor was not made a party to this suit.

6, 1986. The lot at issue, Lot 11, was sold by appellees to Gary and Linda Harris by warranty deed dated May 13, 1987. The Harrises conveyed the property back to appellees on August 31, 1988. The property was then conveyed to Richard Rigby on March 21, 1989. A foreclosure then ensued, and appellants purchased the property from the Secretary of Housing and Urban Development (HUD) by deed dated June 17, 1991.

On March 17, 1995, appellants filed suit[2] alleging that appellees were negligent in the construction of the home by failing to properly determine the type of soil on which the house was built that allowed the house to settle and crack its foundation. The complaint alleged that the subdivision was on top of "Enders soil," a type of soil that expands and contracts with moisture. Appellants alleged that appellees were aware of this type of soil because a 1981 Pope County soil survey had been published and was available to those in the construction industry. Appellants also alleged that appellees breached the implied warranties of fitness, habitation, and merchantability.

Appellees admitted certain undisputed factual allegations in the complaint but denied that they were negligent or that they breached any warranties. Because the suit was filed seven years after the completion of the construction, appellees asserted the five-year limitations period of Ark. Code Ann. § 16-56-112 (Supp. 2001)[3] in their answer.

William Hegeman, a contractor who had known appellee for twenty years, testified that he worked on some of the houses in the Lakehill subdivision, including appellants'. He testified that he put in the footings for appellants' house, with feathered corners instead of square corners. He also testified that he, after consultation with appellee and Taylor, made repairs to cracks in the foundation approximately two years after the original construction by caulking and covering the cracks but not painting them. He testified that the cracks would not be visible to a person who did not

---

[2] The original complaint was nonsuited on August 13, 2001, and refiled on August 14, 2001.

[3] The statute was amended in 2001. However, the amendment is not germane to this appeal.

know that repairs had been made. He also testified that, in 1988, the grout sloped out one-half inch and estimated that, at time of trial, it had come out another inch.

Appellee William Thornsberry testified that he was notified by the Harrises that there was a crack in the foundation and that he directed Taylor and Hegeman to make repairs but not to paint over the repairs. Appellee testified that, when the property was conveyed to Rigby in March 1989, he disclosed the defects to Rigby and allowed him a credit for appellees' not making repairs.

Appellant Howard Curry testified that, when he inspected the house with a realtor prior to purchasing it in 1991, he noticed grout in the foundation blocks and cracks along mortar joints and in the sheetrock. He testified that the foundation on the northeast corner cracked and part of it fell to the ground. He testified that, in 1994, he had a conversation concerning the house with appellee during which appellee stated that he (appellee) had no further obligation. Appellant testified that, in his 1996 deposition, he admitted that he had no evidence that anything was done to conceal the defects.

Appellees made an oral motion for directed verdict at the close of appellants' case, stating that the statute of limitations in section 16-56-112 had run and that there was no fraudulent concealment. The trial court ruled that there was insufficient evidence that appellees fraudulently concealed the defects in the house. After the verdict was directed, appellees made a motion for attorney's fees and the trial court awarded appellees $9,000 in attorney's fees and $740 in costs. This appeal followed. Appellants raise two points: first, that the trial court erred in directing the verdict against them and, second, that the trial court erred in awarding attorney's fees and costs.

Appellants' first point is that the trial court erred in granting appellees' motion for directed verdict. In determining the correctness of the trial court's ruling, we view the evidence in the light most favorable to the party against whom the verdict is sought and give it the highest probative value, taking into account all reasonable inferences deducible from it. *City of Little Rock v. Cameron*, 320 Ark. 444, 897 S.W.2d 562 (1995). A motion for

directed verdict should not be granted if there is any substantial evidence that tends to establish an issue in favor of that party. *Minor v. Failla*, 329 Ark. 274, 946 S.W.2d 954 (1997); *Scott Truck & Tractor Co. v. Alma Tractor & Equip., Inc.*, 72 Ark. App. 79, 35 S.W.3d 815 (2000). Evidence is insubstantial when it is not of sufficient force or character to compel a conclusion one way or the other or if it does not force a conclusion to pass beyond suspicion or conjecture. *Cameron, supra.*

■ In directing the verdict, the trial court found no evidence of fraudulent concealment that would toll the statute of limitations found in Ark. Code Ann. § 16-56-112(a), which provides that "[n]o action in contract . . . to recover damages caused by any deficiency in the design, planning, supervision, or observation of construction or the construction and repair of any improvement to real property . . . shall be brought against any person . . . more than five (5) years after substantial completion of the improvement." Section 16-56-112(d) contains an exception for fraudulent concealment. Section 16-56-112 is a statute of repose and cannot be used to extend what would otherwise be a three-year statute of limitations period under Ark. Code Ann. § 16-56-105 (1987) for negligence or for implied contracts. *East Poinsett County Sch. Dist. No. 14 v. Union Std. Ins. Co.*, 304 Ark. 32, 800 S.W.2d 415 (1990).

■ The supreme court recently addressed what constitutes fraudulent concealment:

> In order to toll the statute of limitations, we said that plaintiffs were required to show something more than a continuation of a prior nondisclosure. We said that there must be evidence creating a fact question related to "some positive act of fraud, something so furtively planned and secretly executed as to keep the plaintiff's cause of action concealed, or perpetrated in a way that it conceals itself."

*Shelton v. Fiser*, 340 Ark. 89, 96, 8 S.W.3d 557, 562 (2000) (quoting *Martin v. Arthur*, 339 Ark. 149, 3 S.W.3d 684 (1999)). Accordingly, it is clear from our case law that not only must there be fraud but the fraud must be furtively planned and secretly executed so as to keep the fraud concealed.

██ ██ Most of the evidence presented goes to whether appellees were negligent in the construction of the house and the damages suffered by appellants. Here, we are not concerned with the merits of the appellants' underlying claims, but instead we address whether their complaint was timely filed. *See Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). The arguments made by appellants basically assert that appellee and his partner Taylor fraudulently concealed the condition of the house by building the house with knowledge that the property was on "Enders soil" without taking countermeasures to keep the soil from expanding and contracting. Even if this could be called concealment, it was "discovered" when the Harrises discovered cracks in the foundation between May 1987 and August 1988. Appellants also contend that Hegeman's repairing the cracks constituted another concealment that would toll the limitations period. However, when appellees conveyed the property to Rigby in March 1989, they disclosed the defects to Rigby and allowed him a credit for appellees' not making repairs. The notice of a prior purchaser of defects in the construction of the house is imputed to the subsequent purchaser and bars the subsequent purchaser's action for negligence or breach of implied warranties. *Briggs v. Riversound Ltd. P'ship*, 942 S.W.2d 529 (Tenn. Ct. App. 1996) (collecting cases). Appellant testified that, in his 1996 deposition, he admitted that he had no evidence that anything was done to conceal the defects. Further, appellant testified that, when he inspected the house with a realtor prior to purchasing it in 1991, he noticed grout in the foundation blocks and cracks along mortar joints and in the sheetrock. Appellant argues that appellee concealed the fraud when he (appellee) met with appellant in 1994 to discuss drainage problems appellant was experiencing. According to appellant, appellee denied that he built the house and that this constituted fraudulent concealment. This is not concealment because appellant, by his own testimony, shows that he was aware of problems with the construction of the house when he met with appellee. If the problem was serious enough for appellant to meet and discuss the problem with appellee, it was sufficient knowledge to commence the running of the statute of limitations. *See First Pyramid Life Ins. Co. v. Stoltz*, 311 Ark. 313, 843 S.W.2d 842 (1992).

For their second point, appellants argue that the trial court erred in awarding attorney's fees to appellees because appellants' action was not based on a contract but, instead, was based in tort or on an *implied* contract. After the trial court directed the verdict in favor of appellees, appellees filed a motion seeking attorney's fees of $13,110 and costs of $1,256. A detailed invoice was attached to the motion. The trial court entered an order granting appellees $9,000 in attorney's fees and $740 in costs, after deleting certain time entries for work for appellees in other similar cases then pending.

■■ Arkansas Code Annotated section 16-22-308 (1999) provides that "[i]n any civil action to recover on . . . [a] breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney fee to be assessed by the court and collected as costs." A trial court is not required to award attorney's fees and, because of the trial judge's intimate acquaintance with the trial proceedings and the quality of service rendered by the prevailing party's counsel, appellate courts usually recognize the superior perspective of the trial judge in determining whether to award attorney's fees. *Jones v. Abraham*, 341 Ark. 66, 15 S.W.3d 310 (2000); *Chrisco v. Sun Indus. Inc.*, 304 Ark. 227, 800 S.W.2d 717 (1990). The decision to award attorney's fees and the amount to award are discretionary determinations that will be reversed only if the appellant can demonstrate that the trial court abused its discretion. *Nelson v. River Valley Bank & Trust*, 334 Ark. 172, 971 S.W.2d 777 (1998); *Burns v. Burns*, 312 Ark. 61, 847 S.W.2d 23 (1993). A grant of attorney's fees is an issue within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. *Chrisco, supra.*

Appellants alleged in their complaint that appellees were negligent in the construction of the subdivision and that they breached the implied warranties of fitness and habitability. There is some overlap in the proof required for each cause of action. *Briggs, supra.* Appellants argue that, because their cause of action was based in tort and on a duty imposed by an *implied* contract, section 16-22-308 does not authorize an award of fees.

 There is an implied warranty of habitability in the sale of a new house in Arkansas. *Wawak v. Stewart*, 247 Ark. 1093, 449 S.W.2d 922 (1970). An action alleging a breach of the warranty of habitability is an action on the contract that authorizes the recovery of fees pursuant to an attorney fee provision in the agreement or by statute. *Fairchild v. Park*, 90 Cal. App. 4th 919, 109 Cal. Rptr. 2d 442 (2001); *Cabal v. Donnelly*, 302 Or. 115, 727 P.2d 111 (1986); *Brickler v. Myers Constr. Inc.*, 92 Wash. App. 269, 966 P.2d 335 (1998). In *Rogers v. Mallory*, 328 Ark. 116, 941 S.W.2d 421 (1997), the supreme court assumed, but did not decide, that an action for breach of an implied warranty was a contract action.

Further, whether an action is based on contract or tort depends upon the nature of the right sued upon, not the form of the pleading or relief demanded. *Bankston v. Pulaski County Sch. Dist.*, 281 Ark. 476, 665 S.W.2d 859 (1984). If based on breach of promise it is contractual; if based on breach of a non-contractual duty it is tortious. *L.L. Cole & Son, Inc. v. Hickman*, 282 Ark. 6, 665 S.W.2d 278 (1984). In the final analysis we look to the pleadings to determine the nature of plaintiff's claim. *Id.*

In *Bankston*, the supreme court noted that breach of warranty actions are often hybrids of tort and contract. The court held that the complaint was primarily for tort but that it also stated a cause of action for breach of the implied warranty of fitness for habitation where it alleged the installation of a defective septic system and sought damages for the repair of the defect. The court also said that, in ascertaining whether the action is for tort or for contract, one can look to the type of damages sought. In the present case, there are allegations that appellees breached the implied warranty because the home's foundation was defective due to the soil properties and sought damages in the amount of repairs made by appellants. Therefore, the present case was a contract action, providing the trial court with a basis to award fees under section 16-22-308.

 As noted above, an attorney's fee determination is a discretionary decision for the trial court. Here, the trial court exercised its discretion by reducing the amount of hours claimed

by appellees for work on other, similar cases then pending against appellees. The trial court found that, with the elimination of these hours, the hours claimed and fees charged were reasonable. Appellants do not challenge the fees except to argue that they should have been allowed to cross-examine appellees' attorney to determine whether there was still duplicative work in the fees that were awarded. It has been held that it is not even necessary that the trial court hold a hearing on the amount of attorney's fees, because, having presided over the proceeding, he is familiar with the services rendered by the attorney. *See Potter v. Potter,* 280 Ark. 38, 655 S.W.2d 382 (1983); *Lytle v. Lytle,* 266 Ark. 124, 583 S.W.2d 1 (1979). We cannot say that the trial court abused its discretion.

Affirmed.

STROUD, C.J., and NEAL, J., agree.