88 P.3d 565

Simon **MAYCOCK** and Christy **Maycock**, husband and wife, Plaintiffs–Appellants,

v.

**ASILOMAR DEVELOPMENT, INC.,** an Arizona corporation, Defendant–Appellee.

No. 1 CA–CV 02–0710.

Court of Appeals of Arizona, Division 1, Department T.

April 22, 2004.

496

Combs Law Group, by Patricia A. Premeau, Kathleen D. Fox, Phoenix, Attorneys for Plaintiffs–Appellants.

Meagher & Gerr, P.L.L.P., by Jay R. Graif, Jeffrey C. Matura, Scottsdale, Attorneys for Defendant–Appellee.

## OPINION

GEMMILL, Judge.

¶ 1 Plaintiffs Simon and Christy Maycock appeal the trial court's decision granting summary judgment in favor of Defendant Asilomar Development, Inc. The trial court found that Arizona Revised Statutes ("A.R.S.") section 12–552 (2003), a statute of repose governing claims against builders, precluded the Maycocks' claim against Asilomar, the builder of their home. We reverse and remand for further proceedings because we find questions of fact that preclude summary judgment. We also hold that the knowledge of a prior owner is imputed to the current owner for the purpose of applying § 12–552, and we affirm this portion of the trial court's ruling.

## FACTS AND PROCEDURAL HISTORY

¶ 2 In reviewing a decision on a motion for summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the party against whom judgment was entered. *Prince v. City of Apache Junction,* 185 Ariz. 43, 45, 912 P.2d 47, 49 (App.1996).

¶ 3 Prior to June 1992, Mark Cummings entered into a contract with Asilomar, a licensed contractor, to construct a single family home. Asilomar substantially completed construction by June 2, 1992. Cummings then occupied the home until November 1998, when he sold the property to the Maycocks.

¶ 4 After moving into the home, the Maycocks experienced problems with the residence. They noticed movements in the slab and walls throughout the home, as well as buckling in walls and sagging and cracking of the garage floor. In September 2000, Tom Thomas, a civil engineer hired by the Maycocks to evaluate the property, concluded that the unusual movements in the structure indicated inadequate compaction of the backfill soils during construction.

¶ 5 The Maycocks filed suit against Asilomar in January 2001, alleging negligence and breach of express and implied warranties.[1]

---

1. The same complaint alleged claims against Cummings for breach of contract, fraud, consumer fraud, negligent misrepresentation, breach of duty of good faith and fair dealing, negligence, and mutual mistake. These claims are not part of this appeal.

¶ 6 Asilomar moved for summary judgment on the basis that the claims of the Maycocks were barred by A.R.S. § 12–552. This statute precludes contract and implied warranty claims against builders filed more than eight years after substantial completion of the improvements, unless the injury occurs during the eighth year after substantial completion or a latent defect is discovered during the eighth year. A.R.S. § 12–552. If the injury or discovery of a latent defect occurs during the eighth year, the action must be filed within one year of the injury or discovery. A.R.S. § 12–552.

¶ 7 The Maycocks' claim was filed more than eight years after substantial completion and was not based on an injury occurring in the eighth year. Therefore, according to Asilomar, the Maycocks were required to show that the defect was latent and not discovered until the eighth year. Asilomar asserted that the Maycocks, in separate litigation against their home inspector, had claimed the defects should have been discovered through inspection. It also argued that the Maycocks' expert, Tom Thomas, had opined that the defects would have been noticeable during Cummings' ownership of the property. Asilomar contended therefore that the defects were not latent, or if they were latent, they were discovered within the first seven years, and so were barred by A.R.S. § 12–522.

¶ 8 The Maycocks opposed the motion and filed a simultaneous motion for an extension of time to conduct discovery pursuant to Rule 56(f), Arizona Rules of Civil Procedure. They did not dispute that they were bringing their claim in the ninth year after substantial completion of the improvements to the property. The Maycocks asserted that although Tom Thomas had stated that Cummings must have observed changes in the condition of the property, Thomas never opined that Cummings must have known of the actual construction defects. The Maycocks also noted that the parties had not yet taken Cummings' deposition and that in his answer he had denied knowledge of any deficiencies in the property.

¶ 9 The Maycocks further argued that whether Cummings had knowledge of the defects during his residency in the home was irrelevant to whether the Maycocks should have discovered the defects. The Maycocks also drew a distinction between whether Cummings may have known of certain defects in the structure compared to whether he knew of the inadequate compaction of the soil. They further contended that their cause of action could not have accrued based on Cummings' undisclosed knowledge.

¶ 10 Cummings submitted an affidavit in response to Asilomar's motion for summary judgment stating that he had noticed certain areas of unevenness in the floor of the property within the first two years after construction, that he brought the matter to the attention of Asilomar, that Asilomar advised him that the unevenness was the result of normal settlement, and that the floors remained the same until he sold the home to the Maycocks. He further stated that the unevenness in the floors was fully disclosed to the Maycocks and that he was unaware of any other problems or alleged defects regarding the soils or settlement of the house. Simon Maycock denied that Cummings had ever disclosed information about the unevenness of the floors or his discussions with Asilomar.

¶ 11 At oral argument before the trial court, Asilomar requested judgment on the negligence claim as well as the breach of warranty claim, alleging that the Maycocks had made no claim for personal injury or personal property damage and therefore the claim was not one for tort. The briefing by the parties prior to the argument had not focused specifically on the negligence claim.

¶ 12 The trial court granted Asilomar's motion on both the breach of warranty and negligence claims. The court found that the Maycocks' expert opined that Cummings knew or should have known of the settlement of the property during his residence and that by affidavit Cummings admitted noticing some settlement. The court found it undisputed that the defect was "known or evident after reasonable inspection during the first six years after substantial completion." The court also found that A.R.S. § 12–552 applied to a piece of real estate regardless of ownership or by whom the observation of the defect was made. Therefore, the court con-

cluded, the one-year exception to the eight-year statute of repose in § 12–552(B) did not apply and the Maycocks' claims were barred. The court also recognized that the statute of repose would not bar claims for professional negligence, but found that the Maycocks' claims arose in contract and were subject to § 12–552.

¶ 13 The Maycocks filed subsequent motions seeking reconsideration but final judgment was eventually entered in favor of Asilomar against the Maycocks, resulting in this appeal. We have jurisdiction pursuant to A.R.S. § 12–2101(B) (2003).

## ANALYSIS

¶ 14 Summary judgment may be granted when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(c). In reviewing a decision on a motion for summary judgment, we determine *de novo* whether any genuine issues of fact exist and whether the trial court erred in its application of the law. *Saenz v. State Fund Workers' Comp. Ins.*, 189 Ariz. 471, 473, 943 P.2d 831, 833 (App.1997).

¶ 15 Section 12–552 is a statute of repose that limits the time within which parties may bring breach of contract and implied warranty actions against developers, builders, and certain others. Subsection (A) provides a general limitation of no more than eight years after substantial completion:

A. Notwithstanding any other statute, *no action or arbitration based in contract may be instituted or maintained* against a person who develops or develops and sells real property, or performs or furnishes the design, specifications, surveying, planning, supervision, testing, construction or observation of construction of an improvement to real property *more than eight years after substantial completion* of the improvement to real property.

A.R.S. § 12–552(A) (emphasis added). Because the Maycocks' home was completed in June 1992, the eight-year period expired in

June 2000. The Maycocks purchased the home from Cummings in November 1998 but did not file suit against Asilomar until January 2001, during the ninth year following substantial completion of the home. Section 12–552(A) therefore bars any contract or implied warranty [2] claims by the Maycocks unless an exception is applicable.

¶ 16 The statute allows an exception if injury to the property occurs or a latent defect is discovered during the eighth year:

B. Notwithstanding subsection A of this section, in the case of injury to real property or an improvement to real property, *if the injury occurred during the eighth year after the substantial completion*, or, in the case of *a latent defect, was not discovered until the eighth year after substantial completion*, an action to recover damages for injury to the real property may be brought within one year after the date on which the injury to real property or an improvement to real property occurred or a latent defect was discovered, but in no event may an action be brought more than nine years after the substantial completion of the improvement.

A.R.S. § 12–552(B) (emphasis added). "Latent defect" is not defined in the statute but has been generally defined by this court as a "hidden or concealed defect" that "could not be discovered by reasonable and customary observation or inspection." *S Dev. Co. v. Pima Capital Mgmt. Co.*, 201 Ariz. 10, 16, ¶ 12, 31 P.3d 123, 129 (App.2001) (quoting Black's Law Dictionary 611 (Abridged 6th ed.1991)). The Maycocks acknowledge that the first exception in § 12–552(B), for injury to the property occurring during the eighth year, is not applicable in this dispute. But they insist that the second exception, for a latent defect not discovered until the eighth year, is applicable to save their claims from dismissal.

¶ 17 The trial court found that the prior owner, Cummings, had knowledge of the defect and that his knowledge should be imputed to the Maycocks, and therefore the exception in § 12–552(B) did not apply and the

---

**2.** Subsection (C) of A.R.S. § 12–552 provides that the limitations of subsections (A) and (B) are applicable to actions based on implied warranties "arising out of the contract or the construction, including implied warranties of habitability, fitness or workmanship."

eight-year limit of § 12–552(A) barred this claim. Although we agree with the legal conclusion of the trial court that the knowledge of a prior owner is imputed to the current owners to determine application of § 12–552(B), we also conclude that genuine issues of material fact regarding the knowledge of the prior owner preclude summary judgment on this record. *See* Ariz. R. Civ. P. 56(c).

### Fact Questions Preclude Summary Judgment

¶ 18 The parties agreed at oral argument before this court that, for purposes of this appeal, the underlying defect was inadequate soil compaction during construction. The Maycocks deny any awareness of a soil compaction problem until shortly before they filed suit, and Asilomar conceded for purposes of the summary judgment motion that the defect was not discoverable by the Maycocks by reasonable inspection and was therefore latent as to them. The remaining question, therefore, is whether Cummings discovered the defect while he owned the home.

¶ 19 The Maycocks' expert, Tom Thomas, opined that during Cummings' occupancy of the home, substantial changes in the interior of the property would have occurred that would have been obvious to a person living there, and that Cummings must have discovered evidence of a serious problem with the property. Cummings submitted an affidavit stating that within the first year or two of occupancy he noticed some unevenness in the floors, that he reported this to Asilomar, and that Asilomar told him it was normal settlement. He also avowed that during the remainder of his tenancy in the house, the unevenness did not change, nothing suggested to him that other problems existed, and he had no knowledge of problems or defects with the soil or settlement of the house.

¶ 20 This evidence presents unresolved issues of material fact. Thomas said Cummings should have observed changes in the property but Thomas did not say that Cummings should have discovered the defective soil compaction as compared to the unevenness of the floor and other changes in the

home. Cummings denies any knowledge of a soil compaction problem, and his admission that he noticed unevenness in the floor does not necessarily compel a finding of knowledge of poor soil compaction. The record at this stage contains no conclusive evidence connecting the unevenness observed by Cummings with knowledge of inadequate soil compaction, and Cummings has denied knowledge of problems with the soil. Whether Cummings' observations of unevenness in the floors constituted discovery of a defect, particularly in light of Asilomar's alleged representation that the unevenness was normal settlement, is a question for the fact finder.

¶ 21 Asilomar further contends that knowledge of a latent defect is imputed to a homeowner who has actual or constructive knowledge of the manifestations of that defect, citing *Winston Square Homeowner's Ass'n v. Centex West, Inc.,* 213 Cal.App.3d 282, 261 Cal.Rptr. 605, 609–10 (1989). But *Winston Square* does not support this proposition. The comments of the court reveal that the defect in that case, inadequate drainage, was readily apparent when it rained. *Id.* at 610 ("Winston Square claims only the manifestations of the problem were obvious, not the actual defect. As the preceding recital of the evidence shows, this simply is not true.... The testimony shows the actual defect was easily observable."). Here, the defect of inadequate soil compaction was not "easily observable."

¶ 22 It remains to be resolved, therefore, whether Cummings discovered the defect while he owned and occupied the home. Subsidiary fact questions may include whether the defect was latent, the precise facts discovered by Cummings, whether these facts should have led Cummings to discover the defect, whether Asilomar assured Cummings that the unevenness of the floor was the result of normal settlement, and the effect of any such assurance on Cummings.

### Knowledge of Prior Owner Imputed to Current Owner

¶ 23 The Maycocks contend that even if Cummings discovered the defect during the time he owned the home, that knowledge

should not be imputed to the Maycocks to deprive them of their claim against Asilomar. Because it may be determined on remand that Cummings discovered the soil compaction problems, we resolve this issue of first impression in Arizona.

■■■ ¶ 24 The primary goal in interpreting a statute is to find and give effect to legislative intent. *Mail Boxes, Etc. U.S.A. v. Indus. Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). In determining the intent of the legislature, we look first to the language of the statute. *Canon Sch. Dist. No. 50 v. W.E.S. Constr. Co.,* 177 Ariz. 526, 529, 869 P.2d 500, 503 (1994). If the statutory language is unambiguous, we give effect to the language and do not use other rules of statutory construction in its interpretation. *Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). Statutory interpretation is an issue of law that we review *de novo. State Comp. Fund v. Superior Court,* 190 Ariz. 371, 374, 948 P.2d 499, 502 (App. 1997).

¶ 25 We first look to the language of the statute. The statute creates an exception to the bar against claims after eight years "in the case of a latent defect [that] was not discovered until the eighth year" and allows a claim to be brought within one year of when "a latent defect was discovered." A.R.S. § 12–552(B). This language focuses on the *discovery* of the defect, not on *who* discovered it. A plain reading of § 12–552(B) reveals that if a latent defect is discovered prior to the eighth year, regardless of which owner may have discovered it, then an action for breach of contract or implied warranty must be brought by the end of the eighth year or it is barred.

¶ 26 Both sides argue that our supreme court in *Richards v. Powercraft Homes, Inc.,* 139 Ariz. 242, 678 P.2d 427 (1984), provided useful guidance for resolving this issue, even though the *Richards* opinion preceded the enactment of § 12–552. In *Richards,* the court eliminated the requirement of privity and extended the implied warranty of workmanship and habitability to allow subsequent purchasers to maintain actions against home builders for breach of the warranty. *Id.* at 245, 678 P.2d at 430. The Maycocks argue

that allowing Cummings' knowledge to be imputed to them would violate the public policy recognized in *Richards* of protecting innocent purchasers of homes and holding builders accountable for their work. *Id.* It is significant, however, that even though the supreme court eliminated the requirement of privity for subsequent homeowners with implied warranty claims, the court emphasized that the implied warranty "is *limited to latent defects which become manifest after the subsequent owner's purchase* and which were not discoverable had a reasonable inspection of the structure been made prior to purchase." *Id.* (emphasis added). If the defect had been discovered, or had become manifest, before the new owner purchased the home, the warranty would not exist. Although not dispositive, this language from our supreme court supports our conclusion that knowledge of the prior owner is imputed to the current owner for purposes of § 12–552.

¶ 27 At least one court from another jurisdiction has concluded that the knowledge of a prior owner of defects in the construction of a house is imputed to a subsequent purchaser to bar an action for breach of implied warranties. *See Curry v. Thornsberry,* 81 Ark.App. 112, 98 S.W.3d 477, 482 (2003) (rejecting argument that statute of repose should be tolled for fraudulent concealment where prior owners knew of or discovered defects allegedly concealed). Other courts have similarly found in other circumstances that the knowledge of a prior owner regarding a defect can be imputed to a subsequent owner to bar a claim for negligent construction. *See Bradler v. Craig,* 274 Cal.App.2d 466, 79 Cal.Rptr. 401, 405 (1969) ("Knowledge or notice of defects or damage that came to the attention of [plaintiffs'] predecessors in interest would be imputed to plaintiffs as of the date thereof. . . . If the defects were such that a reasonable man would have taken corrective action, the statute [of limitations] would commence to run."); *Briggs v. Riversound Ltd. P'ship,* 942 S.W.2d 529, 531 (Tenn.Ct.App.1996) ("[S]ubsequent purchaser may maintain a negligence action against those who constructed a residence, if the defects . . . are latent ones, not known or

reasonably discoverable to either the previous owners ... or subsequent purchaser.").

¶ 28 The Maycocks argue that to adopt an interpretation of the statute that would abrogate a plaintiff's cause of action before it even accrues would be untenable. We find this unpersuasive because that is precisely what a statute of repose does: it sets a period of time within which claims must be brought regardless of when the cause of action may accrue. Under a statute of repose, a claim may be barred if it does not accrue within the allowable statutory period.[3]

### Additional Issues

¶ 29 The Maycocks argue that the trial court erred in granting summary judgment on their negligence claim. Asilomar initially sought summary judgment on all claims on the basis of the statute of repose, § 12–552, but this statute does not apply to negligence claims. *Fry's Food Stores of Arizona, Inc. v. Mather & Assocs., Inc.*, 183 Ariz. 89, 90, 900 P.2d 1225, 1226 (App.1995). Asilomar's motion for summary judgment did not specifically address the Maycocks' negligence claim but the trial court granted summary judgment on the negligence claim after it was brought to the court's attention at argument. Because the motion focused on § 12–552 and the negligence claim was not fully briefed prior to the argument, we are not persuaded that the negligence claim was properly before the court when the initial ruling was issued. We therefore reverse the trial court's grant of summary judgment on the negligence claim—without prejudice to the filing of another motion—and remand for further proceedings.

¶ 30 The Maycocks also contend that the court erred in denying their request for an extension of time to conduct further discovery under Rule 56(f), Arizona Rules of Civil Procedure. Because we are remanding for further proceedings, we need not address this issue.

¶ 31 Finally, the Maycocks request attorneys' fees on appeal pursuant to A.R.S. § 12–341.01 (2003). Section 12–341.01 allows the court, in its discretion, to award attorneys' fees to the successful party in a contested

action arising out of contract. Because the successful party in this dispute has not yet been determined, we decline to award attorneys' fees on appeal.

¶ 32 The Maycocks argue that we should award fees under the authority of *Wagenseller v. Scottsdale Memorial Hospital*, 147 Ariz. 370, 710 P.2d 1025 (1985). In *Wagenseller*, the Arizona Supreme Court held that a successful party who achieves reversal of an unfavorable interim order may be entitled to an award of fees if that order is central to the case and if the appeal finally determines a significant issue of law that could be considered a separate unit. *Id.* at 393–94, 710 P.2d at 1048–49. We decline to award fees under *Wagenseller* because we do not find that the *Wagenseller* exception applies here. Although we have agreed with the Maycocks that fact questions preclude summary judgment, we have agreed with Asilomar on the statutory interpretation issue presented in this case. In the event that the Maycocks ultimately prevail in this dispute, however, the trial court is authorized to consider, in its discretion, an award of fees incurred in this appeal.

### CONCLUSION

¶ 33 Because disputed issues of fact preclude summary judgment on the Maycocks' breach of implied warranty claim, we reverse and remand for further proceedings. We affirm the trial court's ruling that the knowledge of the prior owner, Cummings, will be imputed to the current owners for the purpose of applying A.R.S. § 12–552. We also reverse the summary judgment on the negligence claim and remand for further proceedings. Finally, we reverse the award of attorneys' fees and costs in favor of Asilomar and we decline to award attorneys' fees on appeal.

CONCURRING: JON W. THOMPSON, Presiding Judge, LAWRENCE F. WINTHROP, Judge.

---

**3.** Some statutes of repose have been determined to be unconstitutional, but no challenge to the

constitutionality of § 12–552 is asserted in this case.