NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

R.E.P. CUSTOM BUILDERS INC., an Arizona corporation,
*Third Party Plaintiff/Appellant*,

*v.*

MCBRIDE EXCAVATING CORPORATION, an Arizona corporation;
MINGUS MOUNTAIN MASONRY, L.L.C., an Arizona Limited Liability
Company, and FOXWORTHY CONCRETE, INC., an Arizona corporation,
*Third Party Defendants/Appellees*.

No. 1 CA-CV 18-0358
FILED 6-4-2019

Appeal from the Superior Court in Yavapai County
No.  P1300CV201600183
The Honorable Christopher L. Kottke, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Springel & Fink, LLP, Phoenix
By Leonard T. Fink, Thomas G. Levine

Shorall McGoldrick Brinkmann, PC, Phoenix
By Scott M. Zerlaut
*Co-Counsel for Appellant*

Wright Welker & Pauole, PLC, Phoenix
By Diane L. Bornscheuer, Donald B. Petrie
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Kent E. Cattani delivered the decision of the Court, in which Presiding Judge David D. Weinzweig and Judge James P. Beene joined.

---

**C A T T A N I**, Judge:

**¶1**        R.E.P. Custom Builders Inc. appeals from the superior court's entry of summary judgment in favor of McBride Excavating Corporation based on Arizona's eight-year statute of repose for actions arising under construction contracts. *See* Ariz. Rev. Stat. ("A.R.S.") § 12-552. For reasons that follow, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

**¶2**        In January 2006, the Whiles family entered a construction contract with REP to build a custom home in Cornville, Arizona. REP then hired McBride (among others) as a subcontractor to provide certain work related to the house's foundation. In conjunction with that subcontract, McBride executed a "Supplemental Insurance & Indemnity Agreement for Subcontractors" that, as relevant here, required McBride to (1) name REP as an additional insured on its commercial general liability insurance policy for liability arising out of McBride's work under the subcontract and (2) indemnify REP for all claims arising from McBride's work under the subcontract. The house was substantially completed as of March 14, 2008.

**¶3**        The Whiles family first noticed then-minor issues with the construction (e.g., doors sticking) in 2009. In January 2010, REP sent a representative to look at the property, and the representative did some minor repairs the same day—tightening balcony bolts, adjusting a door jamb, and spraying foam into a retaining wall—but recommended waiting a year for the house to settle. According to Mr. Whiles, REP did not complete any other repairs, provide any list of proposed repairs, or otherwise indicate an intent to make additional repairs after that time.

**¶4**        Over the summer of 2013, the Whiles family allegedly discovered substantial latent defects in the home, including movement and cracks in walls, floors, and retaining walls. In August 2013, the Whileses hired a different contractor, Arizona Ram Jack, to inspect the property to document and evaluate foundation issues and resulting damage. Also in

2013, REP contacted McBride to ask about alleged defects, but McBride did not offer any information, and REP did not follow up. Later, in October 2015, REP hired a geotechnical engineering firm to inspect the Whiles property.

¶5        Meanwhile, in mid-2014, REP's insurance carrier contacted McBride's insurer to seek coverage for claims related to the alleged defects. In October 2014, McBride's insurer responded that REP was not an additional insured under McBride's policy. Then, in December 2015, REP contacted McBride directly seeking a defense and indemnity, which McBride denied in February 2016.

¶6        On March 11, 2016, the Whileses brought a construction defect claim against REP.

¶7        On August 22, 2016, REP filed a third-party complaint against McBride, asserting seven contract-based claims seeking indemnity, defense, and additional insurance coverage premised on the supplemental insurance and indemnity agreement, as well as claims for negligence and common law indemnity. McBride answered the complaint and, among other affirmative defenses, asserted that REP's claims were time-barred.

¶8        McBride then moved for summary judgment on REP's contract-based claims based on the eight-year statute of repose applicable to construction contracts. *See* A.R.S. § 12-552(A). REP opposed, urging that the statute of repose either did not apply to the contract for additional-insured coverage or was tolled while REP and the Whileses worked on repairs and attempted to resolve their dispute under the Purchaser Dwelling Act. *See* A.R.S. § 12-1363(F). *See generally* A.R.S. §§ 12-1361 to -1366. REP also filed a cross-motion for partial summary judgment on the merits of several of its claims, which McBride opposed.

¶9        The superior court granted McBride's motion for summary judgment and denied REP's cross-motion. The court reasoned that § 12-552 applied to all of REP's contract-based claims and found no evidence to support tolling the statute of repose.[1] Approximately one month later on May 29, 2018, after considering McBride's request for attorney's fees and

---

[1]        In addition to the judgment on REP's contract-based claims, McBride moved for and the superior court granted summary judgment on the negligence and common law indemnity claims on other grounds, and REP does not challenge those facets of the ruling.

costs, the court entered a Rule 54(b) judgment in favor of McBride on all of REP's claims. REP timely filed a notice of appeal three days later.

**¶10**        McBride then filed a timely motion to amend the judgment to include an award of attorney's fees and costs, which the superior court denied in an unsigned minute entry. Because that ruling was unsigned, this court stayed the already-pending appeal and revested jurisdiction in the superior court to sign the order resolving McBride's time-extending motion. *See* ARCAP 9(e); *Tripati v. Forwith*, 223 Ariz. 81, 84, ¶ 15 (App. 2009). The superior court entered a signed ruling on McBride's motion to amend on July 27, 2018. The appeal was automatically reinstated on July 30 when this court received the signed order.

**¶11**        On July 31, REP filed in superior court a motion for reconsideration or for new trial challenging the summary judgment ruling. After the superior court promptly granted McBride's request to strike REP's motion, REP moved for reconsideration of that ruling, then filed an amended notice of appeal that included the court's order striking REP's motion.

**DISCUSSION**

**I.        Scope of the Appeal.**

**¶12**        REP's appeal challenges both the summary judgment ruling in favor of McBride that led to a final judgment entered May 29, 2018, and the superior court's post-judgment ruling striking REP's motion for reconsideration or for new trial. We have jurisdiction over the appeal from the final judgment under A.R.S. § 12-2101(A)(1).

**¶13**        We lack jurisdiction, however, to consider REP's challenge to the order striking its post-judgment motion. By the time REP filed its motion for reconsideration or for new trial, the appeal had been perfected and reinstated, divesting the superior court of jurisdiction over REP's challenge to the underlying judgment. *See Burkhardt v. Burkhardt*, 109 Ariz. 419, 421 (1973). Although a timely filed motion for new trial would have extended the deadline to appeal, the 15-day deadline for filing a motion for new trial ran from entry of judgment (not from the post-judgment order), and here, REP's motion was not filed until 63 days after entry of judgment. *See* ARCAP 9(e)(1)(D); Ariz. R. Civ. P. 59(b)(1); *Jaynes v. McConnell*, 238 Ariz. 211, 214, ¶ 8 (App. 2015). And rulings on motions for reconsideration are not time-extending and generally are not independently appealable. *See* ARCAP 9(e)(1); *Arvizu v. Fernandez*, 183 Ariz. 224, 226–27 (App. 1995) (appeal from post-judgment order must raise issues "different from those

that would arise from an appeal from the underlying judgment" for the order to be independently appealable as a special order made after final judgment). Accordingly, we do not further address REP's contention that the superior court erred by striking its post-judgment motion.

## II.    Summary Judgment.

**¶14**        REP argues that the superior court erred by granting summary judgment in favor of McBride, urging both that the eight-year construction-contract statute of repose under A.R.S. § 12-552 does not apply to its claims and that, even if the statute of repose applies, its third-party complaint was timely filed because the limitations period was tolled under the Purchaser Dwelling Act.

**¶15**        Summary judgment is proper if there are no genuine issues of material fact and, based on those undisputed facts, the moving party is entitled to judgment as a matter of law. Ariz. R. Civ. P. 56(a); *Orme Sch. v. Reeves*, 166 Ariz. 301, 305 (1990). To establish entitlement to summary judgment, the party with the burden of proof on a claim or defense "must submit 'undisputed admissible evidence that would compel any reasonable juror to find in its favor on every element of its claim.'" *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 213, ¶ 18 (App. 2012) (quoting *Comerica Bank v. Mahmoodi*, 224 Ariz. 289, 293, ¶ 20 (App. 2010)). In contrast, the party opposing a claim may establish a basis for summary judgment by simply "point[ing] out by specific reference to the relevant discovery that no evidence exist[s] to support an essential element of the [non-moving party's] claim." *Orme Sch.*, 166 Ariz. at 310; *see also Mahmoodi*, 224 Ariz. at 292, ¶ 18. The non-moving party then must produce sufficient evidence of a genuine issue of material fact as to one or more essential elements of the claim or defense to overcome the motion. *Orme Sch.*, 166 Ariz. at 310; *see also* Ariz. R. Civ. P. 56(c)(3).

**¶16**        We review the grant of summary judgment de novo, viewing the facts in the light most favorable to the party against which judgment was entered. *Allen*, 231 Ariz. at 213, ¶ 14. We similarly review de novo questions of statutory construction. *Evans Withycombe, Inc. v. W. Innovations, Inc.*, 215 Ariz. 237, 239, ¶ 6 (App. 2006).

### A.    Statute of Repose.

**¶17**        Arizona's construction-contract statute of repose limits the time in which any action based in contract may be brought against developers, builders, and certain others involved in construction of real property improvements:

> Notwithstanding any other statute, no action . . . based in contract may be instituted or maintained against a person who . . . performs or furnishes the design, specifications, surveying, planning, supervision, testing, construction or observation of construction of an improvement to real property more than eight years after substantial completion of the improvement to real property.

A.R.S. § 12-552(A); *see also Maycock v. Asilomar Dev., Inc.*, 207 Ariz. 495, 498, ¶ 15 (App. 2004). The statute allows a limited extension to nine years after substantial completion if a latent defect is not discovered until the eighth year. A.R.S. § 12-552(B). For these purposes, an "action based in contract" includes one "based on a . . . written agreement for construction or for the services set forth in subsection A of this section [including design, specifications, surveying, planning, supervision, testing, construction or observation of construction]." A.R.S. § 12-552(F).

¶18 Here, the parties agree that the construction was "substantially complete" as of March 14, 2008, when Yavapai County issued a certificate of occupancy. *See* A.R.S. § 12-552(E)(3); *see also Evans Withycombe*, 215 Ariz. at 239, ¶ 8 n.2. And they agree that the Whileses discovered the alleged defects well before the eighth year after substantial completion. Accordingly, the time for filing under § 12-552 expired on March 14, 2016, just three days after the Whileses filed their complaint against REP and over five months before REP filed its third-party complaint against McBride.

¶19 REP contends, however, that § 12-552 does not apply to its claims premised on the indemnity and insurance agreement. But this court held over a decade ago that the strictures of § 12-552 apply not only to contract actions brought by property owners, but also to contractors' contract-based third-party complaints against subcontractors—including contract-based indemnity claims. *Evans Withycombe*, 215 Ariz. at 239–40, 242, ¶¶ 10–11, 23.

¶20 REP suggests that we revisit that principle, positing that it is "grossly unfair" to apply the statute of repose to a contractor's third-party indemnity claims, which may not accrue until the contractor's liability and loss are established months or years after the property owner files suit (and likely long after expiration of the statute of repose). *See MT Builders L.L.C. v. Fisher Roofing, Inc.*, 219 Ariz. 297, 302, ¶ 11 (App. 2008). But this argument ignores the distinction between a statute of limitations and the statute of repose. *See Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127, ¶¶ 23–24

(2011). While a statute of limitations is not triggered until a cause of action accrues, the statute of repose defines a substantive right for those it protects, in effect representing a legislative grant of immunity eight years after substantial completion of the house. *Id.*; *see also* A.R.S. § 12-552(A). Because it establishes a fixed time-frame "beyond which no suit may be pursued," *Evans Withycombe*, 215 Ariz. at 240, ¶ 12, the statute of repose may permissibly operate to completely bar claims that do not accrue within the eight-year period.[2] *Albano*, 227 Ariz. at 127, ¶ 24; *see also id.* at 126, ¶ 19 (noting that the Legislature enacted § 12-552 to limit the otherwise "indeterminable period of liability exposure" facing developers and builders).

**¶21** Moreover, even though little time remained for REP to file its third-party complaint against McBride after the Whileses sued, REP had already been aware of the alleged construction defects for several years. REP had also unsuccessfully sought coverage from McBride's insurer in 2014, leaving ample opportunity to pursue a claim for McBride's failure to name REP as an additional insured. And REP knew by February 2016 that McBride had declined to defend or indemnify REP. REP offers no explanation for its failure to act to preserve its claims against McBride before expiration of the statute of repose despite having an opportunity to do so. *Cf. Evans Withycombe*, 215 Ariz. at 240, ¶ 13.

**¶22** REP alternatively argues that the insurance and indemnity agreement at issue here is not itself a construction contract, and thus falls outside of the ambit of § 12-552. REP does not dispute that its subcontract with McBride to provide certain work related to the house's foundation qualifies as a construction agreement subject to § 12-552. Rather, REP asserts that the Supplemental Insurance & Indemnity Agreement for Subcontractors is "separate from and independent of any subcontract for any specific construction," so claims based on the insurance and indemnity

---

[2] REP also offers a cursory assertion that application of § 12-552 to preclude contract claims before they accrue would violate Arizona's constitutional prohibition on laws impairing contractual obligations. *See* Ariz. Const. art. 2, § 25. But "[t]he contract clause only limits the state's ability to impair existing contract obligations; it does not curtail application of proscriptive principles that existed at the time of contract creation." *Dobson Bay Club II DD, LLC v. La Sonrisa de Siena, LLC*, 242 Ariz. 108, 116, ¶ 41 (2017). Here, the statute of repose existed at the time REP and McBride entered their contract and was incorporated into their agreement by operation of law, and thus did not impair either party's contractual obligations. *See id.*

agreement are not "based on a . . . written agreement for construction" as necessary for the statute of repose to apply. *See* A.R.S. § 12-552(F).

¶23 The terms of the insurance and indemnity agreement undermine REP's assertion that it is independent of and unrelated to the subcontract for construction services. The indemnity provision only covers claims "that may arise from the performance of [McBride's] work," and the additional insured provision expressly applies to "liability arising out of operations performed by or on behalf of [McBride] in connection with the operations described within the agreement between [McBride] and [REP]." Moreover, the insurance and indemnity agreement situates itself as a supplement to "other provisions of the subcontract," its terms provided "in consideration of payment to be made to [McBride] for work to be performed by [McBride] on behalf of [REP]." The insurance and indemnity agreement thus simply represents additional terms of the subcontract, and REP offers no authority for the proposition that reciting these terms in a separate document insulates it from the otherwise-applicable statue of repose. *Cf. City of Phoenix v. Glenayre Elecs., Inc.*, 242 Ariz. 139, 146–47, ¶¶ 29, 32 (2017) (defining a written agreement "for" construction-related services covered by § 12-552 as one "with the purpose or object of" engaging such services); *Evans Withycombe*, 215 Ariz. at 242, ¶ 23.

¶24 Accordingly, the superior court did not err by determining that the eight-year construction-contract statute of repose under § 12-552 applied to REP's contract-based claims against McBride.

### B. Tolling Under the Purchaser Dwelling Act.

¶25 REP filed its third-party complaint against McBride eight years, five months, and eight days after substantial completion of the Whileses' house, outside the eight-year deadline set by § 12-552(A). REP nevertheless argues that its claims were not time-barred because the statute of repose was tolled while REP and the Whileses engaged in the notice and repair or replacement process under the Purchaser Dwelling Act ("PDA").

¶26 The PDA imposes certain requirements before a purchaser of a dwelling can bring a construction defect action against the seller (including subcontractors and other construction professionals). *See* A.R.S. § 12-1361(5), (7), (10). *See generally* A.R.S. §§ 12-1361 to -1366. Unless the alleged defect imposes immediate safety concerns, the purchaser must first provide the seller written notice describing in "reasonable detail" the alleged defects and resulting damage to the dwelling. *See* A.R.S. §§ 12-1362(A), -1363(A), (O). The seller then has a right to repair or replace any

such defects before the purchaser may file a dwelling action. *See* A.R.S. §§ 12-1362(B), -1363(N).

¶27 This notice and repair or replacement process is delineated in the PDA in some detail, specifying requirements that notices (both the initial notice by the purchaser and the seller's response) be given in writing and communicated by certified mail, and that steps in the process be completed within prompt timeframes. *See, e.g.*, A.R.S. § 12-1363(A) (purchaser's notice in writing, sent by certified mail), (B) (seller's right to inspect the dwelling, including a requirement that the purchaser allow the inspection within 10 days of the seller's request), (C) (seller's good faith written notice of intent to repair, replace, or provide monetary compensation to be sent by certified mail within 60 days of purchaser's initial notice), (E)(1) (purchaser and seller coordinate repair or replacement within 30 days of seller's notice of intent to repair), (K) (authorizing extension of time periods by written agreement). After completion of any repairs or replacements, or if the seller fails to provide a response or otherwise comply with the specified process, the purchaser may then file a dwelling action. A.R.S. § 12-1363(C), (D), (E)(6), (M).

¶28 As relevant here, the PDA expressly tolls the § 12-552 statute of repose—including contractors' claims against subcontractors—for the full duration of the notice and repair or replacement process, plus 30 days:

> During the notice and repair or replacement process, and for thirty days after substantial completion of the repair or replacement, the statute of limitations and statute of repose, including § 12-552, applicable to the purchaser, including any construction professionals involved in the construction or design, are tolled as to the seller and the seller's construction professionals who were involved in the construction or design of the dwelling for all alleged construction defects described in reasonable detail in the written notice sent to the seller pursuant to subsection A of this section.

A.R.S. § 12-1363(F).[3] The superior court declined to toll the statute of repose on this basis, however, concluding that no evidence showed REP engaging in the PDA's repair or replacement process.

---

[3] New amendments to the PDA will, going forward, include subcontractors in the notice and repair or replacement process and extend

**¶29**        REP argues that strict compliance with the PDA's detailed requirements is not required to support tolling and asserts that there was an ongoing, PDA-compatible investigation and negotiation process with the Whileses based on: (1) its representative's January 2010 visit to the Whileses' house to look at the property and perform some minor repairs, (2) REP's August 2013 receipt of the Ram Jack report, and (3) REP's October 2015 site inspection by a geotechnical engineering firm.[4]

**¶30**        We need not address whether the PDA requires strict compliance with the statutorily delineated notice and repair or replacement process because REP offered no evidence of *any* compliance. Based on the summary judgment record, those three isolated actions were REP's only responses to the alleged construction defects. To the extent the January 2010 visit could be considered a site inspection, *see* A.R.S. § 12-1363(B), there is no evidence that REP proposed or completed any further repairs, or pursued any other follow-up action. *See* A.R.S. § 12-1363(C). Although the August 2013 Ram Jack report for the first time delineated the alleged construction defects in some detail, *see* A.R.S. § 12-1363(A), (O), there is no evidence that REP then followed up with an inspection, repair proposal, or other negotiation. *See* A.R.S. § 12-1363(B), (C), (E). And although the October 2015 site inspection could, in the abstract, form part of the PDA process, *see* A.R.S. § 12-1363(B), the resulting report simply documented the damage to the home (and commented on potential causes), but did not itself offer any repair proposals or lead to separate repair or compensation proposals from REP. *See* A.R.S. § 12-1363(C). Based on the absence of any significant repair or replacement activities evidenced in the summary judgment record, the superior court did not err by concluding that the statue of repose was not tolled under the PDA.

**¶31**        REP also argues that McBride waived any argument that PDA tolling does not apply by failing to plead non-compliance with the PDA process as a defense. But REP's argument mistakes the interplay of the

the tolling period for third-party indemnity or contribution claims against subcontractors. 2019 Ariz. Sess. Laws, ch. 60, §§ 1–2 (54th Leg., 1st Reg. Sess.) (S.B. 1271). These amendments are not, however, applicable to this case.

[4]        REP also notes a May 2016 letter from the Whileses' counsel, but REP did not provide that document during the summary judgment proceedings. And in any event, that letter only reflects discussions of alternative dispute resolution *after* March 24, 2016, by which time the statute of repose had already run.

parties' claims and defenses. McBride's affirmative defense—raised in the answer to REP's third-party complaint—was the statute of repose under § 12-552, not the PDA. REP then raised PDA tolling in its response to McBride's motion for summary judgment. McBride had no cause to raise non-compliance with the PDA until REP raised PDA tolling under A.R.S. § 12-1363(F), particularly given the Whileses' assertion that they had never given PDA notice to REP. *See* A.R.S. § 12-1362(A).

¶32        Similarly, REP asserts that McBride cannot raise non-compliance with the PDA because McBride was not itself a party to the PDA process and did not accept REP's tender of its defense (so as to assert REP's rights under the PDA). *Cf. Cunningham v. Goettl Air Conditioning, Inc.*, 194 Ariz. 236, 242, ¶ 28 (1999) (indemnitor's failure to accept tender waives its right to contest issues resolved by stipulated judgment between plaintiff and indemnitee). This argument again mistakes the interplay of the parties' positions and relative burdens. Because tolling under the PDA was the basis for REP's opposition to McBride's statute of repose defense, REP bore the burden to prove that tolling was proper under the PDA. *Cf. McCloud v. State*, 217 Ariz. 82, 85, ¶ 8 (App. 2007); *Anson v. Am. Motors Corp.*, 155 Ariz. 420, 421 (App. 1987). McBride's contrary position simply pointed to an absence of evidence to support REP's assertion that PDA tolling applied. *See Orme Sch.*, 166 Ariz. at 310.

¶33        Accordingly, the superior court did not err in declining to apply PDA tolling and thus concluding that REP's third-party claim against McBride is time-barred under § 12-552(A).

## III.    Attorney's Fees and Costs on Appeal.

¶34        McBride requests an award of its attorney's fees under A.R.S. § 12-341.01 and § 12-349. In an exercise of our discretion, we decline its request for fees. As the prevailing party, however, McBride is entitled to an award of costs on appeal upon compliance with ARCAP 21.

### CONCLUSION

¶35        The judgment is affirmed.

