12 P.3d 243

**STATE of Arizona, Appellant,**

v.

**Eldon C. SMITH, Appellee.**

**No. 1 CA–CR 99–0937.**

Court of Appeals of Arizona, Division 1, Department C.

Nov. 2, 2000.

Janet Napolitano, Attorney General By Paul J. McMurdie, Chief Counsel, Criminal Appeals Section, Phoenix and Melvin R. Bowers, Jr., Navajo County Attorney, Joel H. Ruechel, Deputy County Attorney, Holbrook, Attorneys for Appellant.

Clifford I. Levenson, Tempe, Attorney for Appellee.

**OPINION**

FIDEL, Judge.

¶1 Pursuant to an agreement with the State, Defendant pled guilty to two counts of using a dangerous drug, both class 4 felonies, and admitted to violating his intensive probation by committing those offenses. The superior court accepted Defendant's guilty plea, but did not follow the plea agreement's proposed imposition of prison time. Instead, the court reinstated Defendant on intensive probation. The State appeals the superior court's sentencing order, arguing that the court was required to impose imprisonment. We agree and accordingly set aside the sentence and remand.

**I.**

¶2 In May 1996, Defendant was convicted and placed on 7 years' intensive probation for the crime of selling dangerous drugs, a class 2 felony, in violation of A.R.S. § 13–3407(A)(7). Over the next few months, the terms of Defendant's intensive probation were gradually relaxed, and Defendant was eventually placed on regular probation in January 1997. In August 1997, however, in the course of revocation proceedings, Defendant was reinstated on 6 years' intensive probation after admitting that he had violated his probation.

¶3 From July 1998 through January 1999, several petitions to revoke probation were filed against Defendant alleging various probation violations, including the use of dangerous drugs, possession of drug paraphernalia, and child molestation. In February 1999, Defendant entered another plea agreement with the State. Under the terms of the agreement, Defendant pled guilty to two new counts of using dangerous drugs and also admitted that he had violated the terms of his intensive probation by committing these new felonies. Both parties agreed that Defendant would be sentenced to prison for the original selling-dangerous-drugs offense as a consequence of violating his probation; they also agreed that Defendant would waive his right to probation and receive a prison sentence for the new drug-use offenses. The agreement capped Defendant's sentence for the original offense at 7 years. The State also agreed to dismiss all remaining charges contained in the pending petitions to revoke.

¶4 At a sentencing hearing on November 2, 1999, the trial court rejected the sentencing provisions of the agreement. The court explained:

The law has changed in the past two years, bringing up ARS 13–901.01 which has to do with the penalties for drug use. The populace of the state of Arizona has viewed that people with problems such as Eldon's should get treatment.

The court gave both parties the opportunity to withdraw from the agreement, but neither party chose to do so. The State, however, asked the court to sentence Defendant to prison for the violation of his probation, and Defendant asked the court to reinstate him on intensive probation. The court reinstated Defendant on intensive probation for the violation.

¶5 The State objected to the ruling, arguing that the mandatory sentencing provisions of A.R.S. § 13–917(B) required the court to impose a term of imprisonment in response to Defendant's commission of two felonies while on intensive probation. The State also contended that Defendant was ineligible for probation because the crime for which he was originally placed on intensive probation—selling dangerous drugs—did not fall among the types of cases subject to mandatory probation under A.R.S. § 13–901.01. The court, however, held fast to its decision to reinstate intensive probation, observing that "a manifest injustice would occur if the court sentenced [Defendant] to prison."

**II.**

¶6 On appeal, the State advances two reasons for its position that Defendant's probation violation is subject to mandatory imprisonment and unaffected by A.R.S. § 13–901.01: that Defendant's underlying conviction involved a crime not covered by § 13–901.01 and that § 13–901.01 was enacted after Defendant committed the underlying

crime. Finding the first argument dispositive, we do not address the second. Because the argument that we address involves statutory interpretation, we review it de novo. *See State v. Johnson*, 195 Ariz. 553, 554, ¶ 3, 991 P.2d 256, 257 (App.1999).

¶ 7 Felonious violations of intensive probation are expressly subject to mandatory imprisonment pursuant to A.R.S. § 13–917(B), which states:

> If a petition to revoke the period of intensive probation is filed and the court finds that the person has committed an additional felony offense ... the court shall revoke the period of intensive probation and impose a term of imprisonment as authorized by law.

The clear terms of this statute apply to Defendant's felonious violations of intensive probation unless there is some contrary overriding statute. Defendant contends that A.R.S. § 13–901.01 is an overriding statute and should apply to the case at hand.

¶ 8 Section 13–901.01 was added to the Arizona criminal code in 1996 when the voters passed Proposition 200, requiring alternatives to incarceration such as treatment, education, and community service for those convicted for the first time of possession or use of dangerous drugs. *See Mejia v. Irwin*, 195 Ariz. 270, 271, ¶ 9, 987 P.2d 756, 757 (App.1999). The trial court cited § 13–901.01 as a factor underlying its decision to reject the sentencing provisions of the plea agreement.

¶ 9 The trial court was mistaken, however, for § 13–901.01 does not apply to Defendant's case. In two cases, this court has applied § 13–901.01 to dispositions for violations of intensive probation. *See State v. Jones*, 196 Ariz. 306, 307, ¶ 7, 995 P.2d 742, 743 (App.1999); *State v. Thomas*, 196 Ariz. 312, 315, ¶ 10, 996 P.2d 113, 116 (App.1999). Neither case, however, was comparable to this one. In both *Jones* and *Thomas*, the dispositive basis for reinstatement of probation was that the defendants had been *placed* on the violated probation for a crime that fell within the framework of § 13–901.01. Under those circumstances, we held that § 13–917(B) was superseded by § 13–901.01(E), which specifically provides for reinstatement

on probation for a "person who has been placed on probation under the provisions of this section...." *See Thomas*, 196 Ariz. at 315, ¶ 10, 996 P.2d at 116 (describing § 13–901.01(E) as a subsequently enacted, more specific provision than § 13–917(B), relating only to persons placed on probation under the very limited circumstances of the statute); *accord Jones*, 196 Ariz. at 307, ¶ 7, 995 P.2d at 743.

¶ 10 Here, in contrast, Defendant's underlying crime was the *sale* of dangerous drugs. The sale of dangerous drugs is explicitly excluded from the types of crimes to which § 13–901.01 applies. *See* A.R.S. § 13–901.01(B). Accordingly, Defendant's violation does not implicate § 13–901.01. Because the § 13–901.01 exceptions to mandatory incarceration do not apply to Defendant's violation, they do not override the explicit mandate of § 13–917(B). Accordingly, the trial court was required, as a matter of law, to sentence Defendant to prison.

¶ 11 Defendant argues as a fallback that the trial court had the authority, pursuant to A.R.S. § 13–917(A), to terminate his intensive probation before reinstating him and thereby to circumvent § 13–917(B)'s mandatory incarceration provisions. The trial court did not terminate Defendant's intensive probation, however; thus we need not dwell on Defendant's suggestion.

## CONCLUSION

¶ 12 Because no overriding statute applies to the case at hand, the trial court was bound, as a matter of law, by the mandatory incarceration provision of A.R.S. § 13–917(B). The sentence of the trial court is accordingly set aside, and the case is remanded for sentencing in compliance with A.R.S. § 13–917(B).

CONCURRING: EDWARD C. VOSS, Presiding Judge, and CECIL B. PATTERSON, Jr., Judge.