69 P.3d 1022

**STATE of Arizona, Appellee,**

v.

**Pamela Jean SINER, Appellant.**

No. 1 CA–CR–01–1055.

Court of Appeals of Arizona, Division 1, Department B.

June 5, 2003.

Terry Goddard, Attorney General By Randall M. Howe, Chief Counsel, Criminal Appeals Section and Cari McConeghy–Harris, Assistant Attorney General, Phoenix, Attorneys for Appellee.

Jill L. Evans, Flagstaff, Attorney for Appellant.

**OPINION**

GEMMILL, Judge.

¶ 1 Pamela Jean Siner appeals her conviction for drive-by shooting. Because we find instructional error, we reverse and remand for further proceedings. We hold that Arizona's doctrine of transferred intent does not apply to the offense of drive-by shooting because drive-by shooting does not require intentionally causing a particular result as an element of the offense.

**FACTS AND PROCEDURAL BACKGROUND**

¶ 2 Siner was the driver of a car from which shots were fired by a passenger in the direction of a pickup truck and home in Bullhead City, Arizona, between 11:00 p.m. and midnight on June 10, 2001. The family living in the home consisted of a husband, wife, and two children, and they were home at the time of the incident. Witnesses testified there was "bad blood" between Siner and the husband and wife who lived in this home.

¶ 3 Siner drove along the street, looking for the husband's truck. Two men were in the vehicle with Siner. After driving down the street more than once, Siner identified the husband's unoccupied truck parked next to the house. The house was approximately twelve feet from the street. The truck was parked in the carport beside the house.

¶ 4 When she located the truck, Siner stated, "Well, there it is." The front seat passenger then stated, "I should blow some caps in that truck." Siner responded, "Yeah, do it." As Siner drove past the house at approximately five miles per hour, the passenger fired four to five shots from a handgun, striking the house and the truck. No one was injured. After the shots were fired, Siner turned off the headlights of the vehicle and drove in the dark to her residence at thirty to fifty miles per hour. Siner told the passengers they could not say anything about what had happened.

¶ 5 While four bullet casings were located, only three bullet strikes were identified. Two bullets struck the house and passed through walls into the interior. One bullet struck the truck and lodged in the headliner of the cab. The two bullets that struck the house missed the truck by approximately four feet.

¶ 6 During her initial interview with police officers, Siner denied any involvement in the incident. However, as she left the interview, she saw the front-seat passenger in another interview room and began yelling at him, telling him not to say anything. Siner later told officers she was driving the vehicle and that the shooting was her idea. Siner also said that the passenger fired the handgun in order to impress her.

¶ 7 Siner was charged with drive-by shooting under an accomplice-liability theory. At trial, she argued that she should not be liable as an accomplice for the conduct of her passenger and further that the passenger intended to shoot only at the truck and not the home. The jury found Siner guilty. On appeal, Siner argues that the jury should not have been instructed on the doctrine of

transferred intent.[1] She raises no accomplice-liability issue.

## APPLICABILITY OF TRANSFERRED INTENT TO DRIVE–BY SHOOTING

¶ 8 Over Siner's objection, the trial court instructed the jury on transferred intent. Outside the presence of the jury, the court indicated its belief that Arizona's transferred-intent statute, Arizona Revised Statutes ("A.R.S.") section 13–203(B)(2001), would allow the intent to shoot at the unoccupied pick-up to be "transferred" to supply the intent to shoot at the home. Siner argues that transferred intent cannot be applied because drive-by shooting does not require intentionally causing a particular result as an element of the offense. Thus, we are presented with a question of statutory interpretation that we review *de novo*. *Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996); *State v. Hensley*, 201 Ariz. 74, 76, ¶ 6, 31 P.3d 848, 850 (App.2001).

¶ 9 The offense of drive-by shooting is defined by A.R.S. § 13–1209(A) (2001):

A person commits drive by shooting by intentionally discharging a weapon from a motor vehicle at a person, another occupied motor vehicle or an occupied structure.[2]

The conduct of intentionally shooting from a motor vehicle at an unoccupied truck would not ordinarily constitute the offense of drive-by shooting. *See* A.R.S. § 13–1209. But intentionally shooting from a vehicle at a home would constitute drive-by shooting. *Id.*

¶ 10 The jury was also instructed on the doctrine of transferred intent, based on A.R.S. § 13–203(B), which provides:

B. *If intentionally causing a particular result is an element of an offense*, and the actual result is not within the intention or contemplation of the person, that element is established if:

1. The actual result differs from that intended or contemplated only in the respect that a different person or different property is injured or affected or that the injury or harm intended or contemplated would have been more serious or extensive than that caused; or

2. The actual result involves similar injury or harm as that intended or contemplated and occurs in a manner which the person knows or should know is rendered substantially more probable by such person's conduct.

(emphasis added).[3]

¶ 11 As indicated by the introductory language of A.R.S. § 13–203(B), this doctrine of transferred intent may only be applied if "intentionally causing a particular result is an element of an offense." Based on this statutory language, we conclude that the doctrine of transferred intent is not applicable to the offense of drive-by shooting because "intentionally causing a particular result" is not an element of this offense.

¶ 12 The drive-by shooting statute, A.R.S. § 13–1209(A), criminalizes conduct, not con-

---

**1.** Because this jury instruction issue is dispositive, we do not reach Siner's alternative argument for reversal based on the State's alleged untimely disclosure of information about a witness.

**2.** The court instructed the jury on the elements of drive-by shooting based on this statute, as follows:

The crime of drive by shooting has four elements. In order to determine that the defendant committed the crime of drive by shooting, you must find that, number one, the defendant discharged a weapon; and number two, the defendant did so from a motor vehicle; and number three, the defendant did so at a person, another occupied motor vehicle or an occupied structure; and number four, the defendant did so intentionally.

**3.** Based on this statute, the jury was instructed:

If intentionally causing a particular result is an element of an offense, and the actual result is not within the intention or contemplation of the person, that element is established if, number one, the actual result differs from that intended or contemplated only in the respect that a different person or different property is injured or affected or that the injury or harm intended or contemplated would have been more serious or excessive than that caused; or, number two, the actual result involved similar injury or harm as that intended or contemplated and occurs in a manner which the person knows or should know is rendered substantially more probable by such person's conduct.

duct causing a particular result: "intentionally discharging a weapon from a motor vehicle at a person, another occupied motor vehicle or an occupied structure." Unlike offenses that require specific results as elements, the offense of drive-by shooting is complete no matter where the bullets went or whether any injury or damage occurred.

¶ 13 We have considered whether discharging a weapon from a motor vehicle at a prohibited target could be a "particular result." But we conclude that this prohibited act constitutes "conduct" rather than a "result" as these words are used in A.R.S. § 13–203 (2001). This distinction between "conduct" and "result" is emphasized by the legislature's use of these words in § 13–203(A), the subsection immediately preceding the transferred-intent doctrine in § 13–203(B). Subsection 13–203(A) states:

A. *Conduct* is the cause of a *result* when both of the following exist:

1. But for the *conduct* the *result* in question would not have occurred.

2. The relationship between the *conduct* and *result* satisfies any additional causal requirements imposed by the statute defining the offense.

(emphasis added). The legislature has carefully distinguished between "conduct" and "result" in § 13–203(A), using these words in an ordinary fashion. *See* A.R.S. § 1–213 (2002). Conduct causes a result, and in this context, a result is distinguished from conduct.[4] We conclude that when the legislature used the word "result" in the introductory language of § 13–203(B), it similarly intended the ordinary meaning of "result" as that which occurs from or as a consequence of prior conduct.

¶ 14 The definition of "intentionally" in the criminal code further confirms the distinction between conduct and result. As set forth in A.R.S. § 13 105(9)(a)(2001):

"Intentionally" or "with the intent to" means, with respect to a *result* or to *conduct* described by a statute defining an offense, that a person's objective is to cause that *result* or to engage in that *conduct*.

(emphasis added). The language of this definition reflects that some offenses criminalize conduct without regard to a particular result, while other offenses criminalize conduct that causes a particular result. The offense of drive-by shooting is committed by conduct—discharging a weapon from a vehicle at a prohibited target. No particular result—injury or damage or apprehension or endangerment—is required to complete the offense.

¶ 15 In contrast to drive-by shooting, many other offenses require particular results as elements. For example, the offenses of first- and second-degree murder require intentionally causing the particular result of death as an element. A.R.S. §§ 13–1105 and –1104 (2001). The offense of assault requires causing the particular result of physical injury, A.R.S. § 13–1203(A)(1)(2001), or placing another in reasonable apprehension of imminent physical injury, § 13–1203(A)(2)(2001), or touching, § 13–1203(A)(3)(2001), as an element. The offense of child abuse requires causing the particular result of injury or endangerment of a child as an element. A.R.S. § 13–3623(2001). The doctrine of transferred intent embodied in § 13–203(B) may be applied under appropriate circumstances to those offenses that require "intentionally causing a particular result" as an element. *See, e.g., State v. Henley,* 141 Ariz. 465, 687 P.2d 1220 (1984) (aggravated assault); *State v. Rodriguez–Gonzales,* 164 Ariz. 1, 790 P.2d 287 (App.1990) (attempted first-degree murder); *State v. Cantua–Ramirez,* 149 Ariz. 377, 718 P.2d 1030 (App. 1986) (child abuse).

¶ 16 Because "intentionally causing a particular result" is not an element of drive-by shooting, the doctrine of transferred intent cannot be applied to transfer an actor's intent from one result to another. It was error for the trial court to instruct the jury on transferred intent.

4. According to The American Heritage Dictionary, the word "result" means "[t]he consequence of a particular action, operation, or course; outcome." The American Heritage Dictionary of the English Language 1109 (1970).

¶ 17 When an error has been made in the jury instructions, we consider whether the error was harmless. *State v. McKeon,* 201 Ariz. 571, 573, ¶ 9, 38 P.3d 1236, 1238 (App.2002). "Error is harmless if we can conclude beyond a reasonable doubt that it did not influence the verdict." *Id.* We cannot conclude that instructing on transferred intent was harmless in this case. The prosecutor logically argued, based on the instruction, that the jury could apply transferred intent to find Siner guilty as an accomplice for her passenger's shots that hit the house, even if the intention was to shoot only at an unoccupied vehicle. Because we cannot conclude beyond a reasonable doubt that the verdict was not based on an improper transfer of intent, we must reverse the conviction. *See State v. Amaya–Ruiz,* 166 Ariz. 152, 173, 800 P.2d 1260, 1281 (1990) (reversing a manslaughter conviction for the death of an unborn child because the application of transferred intent may have allowed defendant to be convicted without proof beyond a reasonable doubt of the requisite intention toward the unborn child).

## CONCLUSION

¶ 18 For these reasons, we reverse Siner's conviction for drive-by shooting and remand for further proceedings consistent with this opinion.

CONCURRING: PHILIP HALL, Presiding Judge and EDWARD C. VOSS, Judge.