200 P.3d 323

**STATE of Arizona, Appellant,**

v.

**Sean Wayne BOTKIN, Appellee.**

**No. 1 CA–CR 07–0083.**

Court of Appeals of Arizona,
Division 1, Department E.

July 31, 2008.
Review Granted in Part Feb. 10, 2009.

Andrew P. Thomas, Maricopa County Attorney By David E. Wood, Deputy County Attorney, Phoenix, Attorneys for Appellant.

Osborn Maledon, P.A. by Larry A. Hammond, Timothy J. Eckstein, Diane M. Meyers, Phoenix, Attorneys for Appellee.

**OPINION**

GEMMILL, Judge.

¶ 1 The fundamental issue presented on appeal is whether the trial court acted within its authority when, after finding Defendant Sean Wayne Botkin violated his intensive probation in 2004 by committing a felony, it continued Botkin on probation rather than revoking probation and imposing a sentence of imprisonment in accordance with Arizona Revised Statutes ("A.R.S.") section 13–917(B) (2001). We conclude that the trial court erred, and we therefore reverse and remand for further proceedings.

**Background**

¶ 2 In 2001, Botkin pled guilty to two counts of kidnapping and one count of aggravated assault with a deadly weapon, both stemming from an incident that occurred in October 2000 (the "2000 offenses"). Botkin was placed on intensive probation for seven years on the two kidnapping counts and five years on the aggravated assault count, with incarceration in the county jail for twelve months as a condition of probation.

¶ 3 In September 2004, Botkin allegedly gave prescription-only pills to a classmate, a class 6 felony offense under A.R.S. § 13–3406(A)(7), (B)(2) (2001) (the "2004 offense"). One week later, a petition to revoke his intensive probation from the 2000 offenses was filed. The State also filed a notice of intent to allege mandatory revocation of probation from the 2000 case pursuant to A.R.S. § 13–917(B). Botkin pled guilty to the 2004 offense, acknowledging a violation of A.R.S. § 13–3406(A)(7). For the 2004 offense, the trial court sentenced Botkin to the presumptive term of one year imprisonment. Regarding the 2000 offenses for which Botkin was on intensive probation, the trial court found that Botkin had violated his probation by committing the 2004 felony. The court

did not, however, revoke his probation but instead reduced his level of probation supervision from intensive to supervised.

¶ 4 The State, relying on A.R.S. § 13–917(B), appealed the trial court's refusal to revoke Botkin's probation and impose a prison term for the 2000 offenses. In 2006, this court vacated the trial court's order that reinstated probation for the 2000 offenses and remanded for further proceedings. *State v. Botkin,* 1 CA–CR 05–0082 (Ariz.App. Feb. 28, 2006) (mem.decision).

¶ 5 On remand, the case was assigned to a different superior court judge. During a December 2006 hearing, the trial court permitted Botkin to withdraw from his initial plea agreement regarding the 2004 offense. At the same hearing, Botkin moved to have his probation for the 2000 offenses reduced from intensive to standard probation. The trial court granted this motion over the State's objection. In conjunction with a new plea agreement, Botkin then pled guilty again to the 2004 offense, and the court deferred acceptance of the plea until the sentencing hearing. Because of the determination of guilt on the 2004 offense, the court found that Botkin had violated the conditions of his probation regarding the 2000 offenses.

¶ 6 At the February 2007 sentencing hearing, the trial court accepted Botkin's plea and sentenced Botkin to a term of incarceration of 326 days for the 2004 offense, with credit for 326 days already served. With respect to the 2000 offenses, the trial court ordered, over the State's objection, that Botkin continue on standard probation.

¶ 7 The State timely appeals.

**Jurisdiction**

¶ 8 Botkin initially challenges whether this court has jurisdiction over the State's appeal. He argues that the State is not appealing an illegal sentence but rather is attempting to appeal a non-appealable presentencing order in December 2006 that reduced Botkin's probationary status from intensive to standard. We disagree.

¶ 9 Section 13–4032(5) (2001), A.R.S., provides that an appeal may be taken by the

State from a sentence "on the grounds that it is illegal." As we determine in this opinion, the trial court did not have authority to avoid the mandatory sentencing requirement of A.R.S. § 13–917(B) once it was determined that Botkin committed a felony in 2004 while on intensive probation in this matter. At the February 2007 sentencing hearing, therefore, the trial court entered an illegal sentence when it failed to apply § 13–917(B) and instead allowed Botkin to continue on standard probation. The State filed a notice of appeal after the December 2006 ruling and a "supplemental" notice of appeal after the February 2007 ruling.[1] The State is entitled to challenge the trial court's refusal to apply the mandatory sentencing feature of § 13–917(B), and we have jurisdiction in accordance with Ariz. Const. art. 6, § 9, A.R.S. § 12–120.21(A)(1) (2003), and § 13–4032(5) (2001). *See State v. Dawson,* 164 Ariz. 278, 281, 792 P.2d 741, 744 (1990) ("The trial court's failure to impose a sentence in conformity with the mandatory provisions of the sentencing statute makes that sentence 'illegal' ... and therefore properly appealable."); *State v. Vargas–Burgos,* 162 Ariz. 325, 326–27, 783 P.2d 264, 265–67 (App.1989) (holding that a sentence not in compliance with the mandatory provisions of a sentencing statute was illegal and appealable).

## Statutory Analysis

¶ 10 This appeal presents issues of statutory interpretation that we review *de novo. See State v. Ontiveros,* 206 Ariz. 539, 541, ¶ 8, 81 P.3d 330, 332 (App.2003); *State v. Siner,* 205 Ariz. 301, 303, ¶ 8, 69 P.3d 1022, 1024 (App.2003). Our goal in interpreting a statute is to ascertain and give effect to the legislative intent. *Maycock v. Asilomar Dev., Inc.,* 207 Ariz. 495, 500, ¶ 24, 88 P.3d 565, 570 (App.2004); *Ontiveros,* 206 Ariz. at 541, ¶ 8, 81 P.3d at 332. We look first to the language of the statutes as the best and most

reliable indicator of the statute's meaning. *Id.* We assume that the legislature has given words their natural and obvious meanings unless otherwise stated. *See* A.R.S. § 1–213 (2002) ("Words and phrases shall be construed according to the common and approved use of the language.").

¶ 11 The material facts in this case are undisputed. We presume that the trial court had good reasons supporting its desire to allow Botkin to continue on probation. But we must decide the legal question of whether the trial court was obligated under § 13–917 to revoke Botkin's probation and impose terms of imprisonment for the 2000 offenses.

¶ 12 The State argues that § 13–917(B) requires a trial court to revoke a defendant's intensive probation and impose a prison term if: (1) a petition to revoke intensive probation is filed, and (2) the trial court finds that the probationer committed a new felony offense while on intensive probation. Botkin argues that A.R.S. § 13–917(B) does not apply and the trial court was not required to impose a term of imprisonment because the court exercised its discretion pursuant to § 13–917(A) to modify Botkin's probation from intensive to standard.

¶ 13 The relevant portions of A.R.S. § 13–917 provide:

A. The adult probation officer shall periodically examine the needs of each person granted intensive probation and the risks of modifying the level of supervision of the person. *The court may at any time modify the level of supervision of a person granted intensive probation, or may transfer the person to supervised probation or terminate the period of intensive probation* pursuant to § 13–901, subsection E.

B. The court may issue a warrant for the arrest of a person granted intensive probation. If the person commits an addi-

---

1. Although these notices of appeal were "inartfully" worded as acknowledged by the State, the initial notice of appeal was timely filed after the December 2006 ruling and the supplemental notice of appeal was timely filed after the February 2007 ruling. In conjunction with the full record of these proceedings, these notices were sufficient to convey adequate notice to Botkin of the State's appeal, as evidenced by Botkin's argu-

ments raised in his answering brief and at oral argument. *See State v. Rasch,* 188 Ariz. 309, 311, 935 P.2d 887, 889 (App.1996) ("A notice of appeal gives the adverse party notice that an appeal has been taken from a 'specific judgment in a specific case.' A 'mere technical error[ ],' however, does not render the notice ineffective, unless the appellee shows that the error prejudiced him." (citation omitted)).

tional offense or violates a condition of probation, the court may revoke intensive probation at any time before the expiration or termination of the period of intensive probation. *If a petition to revoke the period of intensive probation is filed and the court finds that the person has committed an additional felony offense or has violated a condition of intensive probation which poses a serious threat or danger to the community, the court shall revoke the period of intensive probation and impose a term of imprisonment as authorized by law.* If the court finds that the person has violated any other condition of intensive probation, it shall modify the conditions of intensive probation as appropriate or shall revoke the period of intensive probation and impose a term of imprisonment as authorized by law.

(Emphasis added.)

¶ 14 This court considered the mandate of A.R.S. § 13–917(B) in *State v. Smith,* 198 Ariz. 568, 12 P.3d 243 (App.2000). In that case, the defendant was convicted of a drug-related offense and placed on intensive probation. *Id.* at 569, ¶ 2, 12 P.3d at 244. He then committed another drug-related offense that violated the terms of his intensive probation. *Id.* at ¶ 3. During sentencing, the trial court reinstated the defendant on intensive probation for the violation. *Id.* at ¶ 4. On appeal, we emphasized that "[f]elonious violations of intensive probation are expressly subject to mandatory imprisonment pursuant to A.R.S. § 13–917(B)" and that under § 13–917(B) "the trial court was required, as a matter of law, to sentence Defendant to prison." *Id.* at ¶¶ 7, 10. We believe this statute mandates a similar result here.

■ ¶ 15 Section 13–917(B) states that "[i]f a petition to revoke the period of intensive probation is filed and the court finds that the person has committed an additional felony offense ... the court *shall* revoke the period of intensive probation and impose a term of imprisonment as authorized by law."

A.R.S. 13–917(B) (emphasis added). The word "shall" is generally treated as obligatory unless it is shown that the legislature's purpose is better carried out by a permissive interpretation. *HCZ Constr., Inc. v. First Franklin Fin. Corp.,* 199 Ariz. 361, 364, ¶ 11, 18 P.3d 155, 158 (App.2001). Botkin has not provided, nor are we aware of, any evidence that the legislature's use of the term "shall" in § 13–917(B) was meant to be permissive rather than obligatory.

■ ¶ 16 Accordingly, when a petition to revoke intensive probation is filed that alleges a new felony, the court is obligated to revoke probation and impose a term of imprisonment if the probationer is found to have committed the new offense.[2] *Smith,* 198 Ariz. at 570, ¶ 10, 12 P.3d at 245; *State v. Taylor,* 187 Ariz. 567, 569–70, 931 P.2d 1077, 1079–80 (App.1996) ("Once a petition [to revoke intensive probation] is filed, the statute requires revocation whenever the trial court finds that the defendant has committed a felony offense."). Based upon the plain language of the statute, the evident legislative intent is that a person who commits a felony while on intensive probation forfeits the opportunity to remain on probation and must be sentenced to a term of imprisonment.

¶ 17 The sentences immediately before and after the key sentence of § 13–917(B) help confirm this legislative intent. These sentences address offenses and other probation violations that are not specifically described as constituting felonies or serious threats or dangers to the community. For less serious probation violations, the trial court possesses discretion to revoke or not revoke probation. In contrast, the key sentence we are interpreting here focuses on felony offenses and probation violations that pose a serious threat or danger to the community. For these more serious violations of intensive probation, the legislature has mandated that probation must be revoked and the defendant must be sentenced to a term of imprisonment.[3]

---

2. We are not addressing in this opinion the additional portion of § 13–917(B) pertaining to violations of conditions of intensive probation that pose "a serious threat or danger to the community."

3. As we noted in *Smith,* "[t]he clear terms of this statute apply to Defendant's felonious violations of intensive probation unless there is some contrary overriding statute." 198 Ariz. at 570, ¶ 7,

¶ 18 Botkin was placed on intensive probation for a term of seven years. While on intensive probation in 2004, Botkin allegedly committed a class six felony offense pursuant to A.R.S. § 13–3406(A)(7), (B)(2). A petition to revoke Botkin's intensive probation was filed a week later. Under these circumstances, once the trial court found that the 2004 conduct constituted a felony, the court erred by not revoking Botkin's intensive probation for the 2000 offenses and imposing terms of imprisonment in accordance with § 13–917(B).

¶ 19 Botkin argues, however, that the sequence of events changes the outcome. He contends that the trial court, exercising its discretion under A.R.S. § 13–917(A), reduced his probation from intensive to standard in December 2006 *prior to* finding that he had violated his probation by committing the 2004 felony. Because he was no longer on intensive probation when he was found to have violated his probation, § 13–917(B) was not applicable.[4]

■■ ¶ 20 Botkin's argument, if accepted, would render the mandatory sentencing required by the language of § 13–917(B) a nullity. "A cardinal rule of statutory interpretation is to avoid, if possible, an interpretation which renders superfluous any portion of a statute." *In re Maricopa County Super. Ct. No. MH 2001–001139*, 203 Ariz. 351, 354, ¶ 17, 54 P.3d 380, 383 (App.2002) (citation omitted). "[E]ach word or phrase of a statute must be given meaning so that no part is rendered void, superfluous, contradictory or insignificant." *Pinal Vista Props., L.L.C. v. Turnbull*, 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (App.2004) (citation omitted). We recognize that § 13–917(A) states that a "court may at any time modify the level of supervision of a person granted intensive probation."

■ ¶ 21 Although A.R.S. § 13–917(A) states that a court "may at any time" modify a defendant's probation, this language must be considered in conjunction with the specific mandate of § 13–917(B). We believe that subsections (A) and (B) of § 13–917, when read together and harmonized, provide broad authority under subsection (A) for modifying a defendant's probation "at any time" but *not* when the mandatory sentencing provision of subsection (B) is applicable. A trial court "may at any time" modify a defendant's probation; however, if a defendant allegedly commits a felony while on intensive probation and a petition to revoke intensive probation is filed alleging the felony, the trial court no longer has authority under § 13–917(A) to modify the defendant's intensive probation until the petition to revoke intensive probation has been adjudicated. If the court finds that the person committed a felony while on intensive probation, the legislature has mandated that the court must revoke the defendant's intensive probation and impose a term of imprisonment. A.R.S. § 13–917(B). To hold otherwise, as Botkin and our dissenting colleague advocate, would allow a court to circumvent the legislative intent and defeat the mandatory sentencing provision in § 13–917(B), thereby rendering the statutory language superfluous and ineffectual. *See Turnbull*, 208 Ariz. at 190, ¶ 10, 91 P.3d at 1033; *In re Maricopa County Super. Ct. No. MH 2001–001139*, 203 Ariz. at 354, ¶ 17, 54 P.3d at 383.

■ ¶ 22 Our decision harmonizes subsections (A) and (B) of A.R.S. § 13–917. But if there is any remaining conflict between these two subsections, our interpretation of this statute is further supported by the principle that a specific law prevails over a general law. *See State v. Jackson*, 210 Ariz. 466, 472, ¶ 26, 113 P.3d 112, 118 (App.2005) ("we give preference to specific statutory provisions over general ones"); *State v. Davis*, 119 Ariz.

---

12 P.3d at 245. Botkin does not argue that there is a contrary statute that overrides § 13–917.

4. We expressly declined to address this argument in *State v. Smith*, 198 Ariz. 568, 12 P.3d 243 (App.2000):

> Defendant argues as a fallback that the trial court had the authority, pursuant to A.R.S. § 13–917(A), to terminate his intensive proba-

tion before reinstating him and thereby to circumvent § 13–917(B)'s mandatory incarceration provisions. The trial court did not terminate Defendant's intensive probation, however; thus we need not dwell on Defendant's suggestion.

*Id.* at 570, ¶ 11, 12 P.3d at 245.

529, 534, 582 P.2d 175, 180 (1978) ("The principle that the specific law is controlling over the general applies only when there is a conflict between the specific and the general law." (citation omitted)). Section 13–917(B) is specific: the relevant portion is triggered when a defendant commits a felony while on intensive probation and a petition to revoke intensive probation is filed. Section 13–917(A), however, is more general in nature: "The court may at any time modify the level of supervision of a person granted intensive probation, or may transfer the person to supervised probation or terminate the period of intensive probation." Accordingly, to the extent that these two provisions conflict, the specific requirement of § 13–917(B) is controlling over the general authority of § 13–917(A).

¶ 23 Application of § 13–917(B) does not depend on when a trial court finds that a defendant on intensive probation has committed an additional felony offense. The potential application § 13–917(B) is triggered when a petition to revoke intensive probation is filed alleging the commission of a felony. And, based on our interpretation of subsections (A) and (B) of § 13–917, a trial court does not have the authority under (A) to reduce a defendant's probationary status in order to avoid the mandatory sentencing requirement of (B). To permit this would, as already noted, thwart the clear legislative intent embodied in subsection (B).

¶ 24 Botkin also argues that A.R.S. § 13–917(B), by its very terms, does not apply to his situation because no petition to revoke his intensive probation was filed in this case. Absent a petition to revoke Botkin's intensive probation, § 13–917(B) is not applicable. In the record before us, however, there is a petition to revoke Botkin's intensive probation that was filed by the Adult Probation Department in September 2004. We assume, therefore, that Botkin intends to argue that no *new* petition to revoke his probation was filed after we remanded this case following his first appeal.

¶ 25 The record confirms that no new petition to revoke Botkin's intensive probation has been filed after this court's remand in 2006. We do not believe, however, that § 13–917(B) requires a new petition to be filed. When we vacated the order that placed Botkin on supervised probation, he was automatically returned to the previous status of intensive probation.[5] The September 2004 petition to revoke Botkin's probation remained pending and unresolved. Under these circumstances and based upon the plain language of § 13–917(B), the September 2004 petition to revoke Botkin's intensive probation continued to satisfy the requirement that a petition to revoke the intensive probation be filed. We therefore reject Botkin's contention that § 13–917(B), by its very terms, does not apply.

## Question of Mootness

¶ 26 Botkin additionally asserted at oral argument that the State's appeal was moot. We ordered and received supplemental briefing from the parties on this issue. Botkin argues that his probationary term expired on April 13, 2008 and the trial court is therefore divested of authority "to revoke his now-expired probation." We conclude, however, that this argument overlooks A.R.S. § 13–903(D) (2001):

> The running of the period of probation shall cease during the period from the filing of the petition to revoke probation to the termination of revocation of probation proceedings, except that if a court determines that the defendant is not a violator, there is no interruption of the period of probation.

The petition to revoke Botkin's probation was filed in September 2004 and has not yet been resolved. Therefore, under § 13–903(D), if Botkin is ultimately found to have violated a condition of his probation, his period of probation will have been tolled. The trial court retains its authority to act on the pending petition to revoke Botkin's probation.

---

5. In December 2006, both the trial court and Botkin recognized that he remained on intensive probation because the court granted Botkin's motion to reduce his probation from intensive to standard.

### Potential Boykin Issue

¶ 27 Lastly, we express concern over whether Botkin's guilty plea for the 2004 offense was "intelligent and voluntary" as required by *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).[6] During the December 2006 hearing, while explaining to Botkin the consequences of pleading guilty, the trial court stated:

> By pleading guilty to this particular offense, that would also operate as an automatic violation of your probation in CR 2000–16781. Your probation *could* be revoked in those cause numbers, and you *could* be sentenced to prison. *Because you are now on standard probation supervision, it would not be mandatory that you be sentenced to prison.*

(Emphasis added.) Botkin was not informed that if he pled guilty to the 2004 offense, the court would be required to revoke his probation from the 2000 offenses and sentence him to imprisonment for those offenses. Instead, Botkin was told the opposite: that "it would not be mandatory" that he be sentenced to imprisonment. Accordingly, if the trial court considers and finds a *Boykin* violation with respect to Botkin's plea agreement on the 2004 offense, we presume the court will either vacate the plea agreement or allow the defendant to withdraw his guilty plea. *See State v. Gordon*, 125 Ariz. 425, 428 n. 2, 610 P.2d 59, 62 n. 2 (1980) (holding remedy for *Boykin* violation is not reduction in sentence but either setting aside guilty plea as unintelligent or remand to determine if defendant was properly advised of possible sentences); *see also* Ariz. R.Crim. P. 17.5 (granting court discretion to allow party to withdraw from a guilty plea "to correct a manifest injustice").

### Conclusion

¶ 28 Botkin allegedly committed a felony offense in 2004 while on intensive probation as the result of offenses in 2000. A petition to revoke Botkin's intensive probation was promptly filed, alleging the felony offense. The trial court eventually found that the additional felony was committed. On this record, A.R.S. § 13–917(B) mandates that the trial court revoke the defendant's probation and impose terms of imprisonment for the 2000 offenses. The trial court cannot avoid the mandate of § 13–917(B) by reducing a defendant's level of probation supervision pursuant to A.R.S. § 13–917(A) prior to resolution of the petition for revocation.

¶ 29 We therefore reverse the trial court's orders continuing Botkin on standard probation and remand this matter to the trial court for further proceedings consistent with this opinion.

CONCURRING: MAURICE PORTLEY, Judge.

KESSLER, J., concurring in part and dissenting in part.

¶ 30 I concur with the majority that the State's appeal is not moot. *Supra*, ¶ 26. I also concur that if the court is correct in its interpretation of A.R.S. § 13–917(B), this matter must be remanded for a determination of whether there has been a *Boykin* violation and if so, the superior court should either vacate the plea agreement or allow the defendant to withdraw his guilty plea to the 2004 charges. *Supra*, ¶ 27. I dissent, however, on the jurisdictional issue and on the majority's interpretation of § 13–917(B). Accordingly, I would affirm the order continuing Botkin on standard probation.

### Jurisdiction

¶ 31 The State contends and the majority agrees that the State is merely appealing from the superior court's February 2007 order continuing Botkin on standard probation. *Supra*, ¶¶ 8–9. The State contends and the majority agrees that we have jurisdiction of the State's appeal under A.R.S. § 13–4032(5)

---

6. In *Boykin*, the Supreme Court held that a defendant's guilty plea must be made knowingly and voluntarily. 395 U.S. at 243, 89 S.Ct. 1709 (citation omitted). Thus, the trial court is required to ensure that a defendant "has a full understanding of what the plea connotes and of its consequence" before it accepts the guilty plea.

*Id.* at 244, 89 S.Ct. 1709; *see also* Ariz. R.Crim. P. 17.2. The Court in *Boykin* explained that when a plea is not made knowingly, the plea "has been obtained in violation of due process and is therefore void." 395 U.S. at 243, 89 S.Ct. 1709 (citation omitted).

(2001), permitting the State to appeal from a sentence "on the grounds that it is illegal."

¶ 32 We lack jurisdiction of this appeal to the extent it challenges the December 2006 order returning Botkin to standard probation. The Legislature has determined that the State may appeal from an adverse decision in a criminal proceeding in only limited circumstances, those listed in § 13–4032. This statute is narrowly construed and any attempts by the State to appeal outside the exact terms of that section are prohibited. *State v. Dawson,* 164 Ariz. 278, 280, 792 P.2d 741, 743 (1990).

¶ 33 As Botkin has pointed out and is self-evident, if Botkin lawfully was no longer on intensive probation in February 2007 when he was found guilty of the 2004 offense, then the provisions of § 13–917(B) as to mandatory incarceration for violation of intensive probation would not apply. If the State was not appealing from the December 2006 decision placing Botkin on standard probation, then the sentence continuing him on standard probation would not be illegal. Accordingly, to prevail on appeal, the State must be appealing from not only the February 2007 sentence, but also the December 2006 order returning Botkin to standard probation.

¶ 34 As such, the State's appeal from the earlier order is precluded by *State ex rel. McDougall v. Crawford,* 159 Ariz. 339, 340, 767 P.2d 226, 227 (App.1989). In *Crawford,* the defendant was charged in city court with DUI offenses. After that court had accepted a guilty plea, it struck an allegation of a prior DUI conviction and then sentenced the defendant as a first time offender. *Id.* at 339–40, 767 P.2d at 226–27. The State sought special action relief but the superior court dismissed the petition, holding the State had a right of appeal. *Id.* at 340, 767 P.2d at 227. We reversed, holding that the State had no right of appeal. *Id.* As we noted in *Crawford, id.* at 340–41, 767 P.2d at 227–28, the State's right to appeal from an illegal sentence does not permit review of a lower court's pre-sentencing strike of a prior conviction allegation; an appeal is not permitted under that statute "from error committed by the trial judge in the preconviction phase of the trial court proceedings."

¶ 35 It is unclear to me how the majority solves this problem. The majority merely says that the court did not have authority to avoid § 13–917(B)'s mandatory sentencing requirement once it determined Botkin had committed a felony while on intensive probation. *Supra,* ¶ 9. I assume what the majority means is that § 13–917(B) prohibits the superior court from reducing the terms of probation from intensive to standard immediately upon the filing of a petition to revoke intensive probation alleging the commission of a felony. Thus, the appeal would be from an illegal sentence because the superior court could not modify probation once the petition to revoke was filed.

¶ 36 The problem with that argument, however, is that there is no language in § 13–917(B) supporting that conclusion. Rather, that statute provides, in relevant part, that "[i]f a petition to revoke the period of intensive probation is filed *and* the court finds that the person has committed an additional felony offense ... the court shall revoke the period of intensive probation and impose a term of imprisonment as authorized by law." (Emphasis supplied). Nothing in the statute provides that the mere filing of a petition to revoke intensive probation alleging commission of a felony freezes the defendant's probationary status until the court determines if the felony was actually committed.

### Merits

¶ 37 Even if we had jurisdiction, which I conclude we do not, I disagree with the majority on its interpretation of § 13–917(B). The key sentence in that statute for this appeal is:

> If a petition to revoke the period of intensive probation is filed and the court finds that the person has committed an additional felony offense or has violated a condition of intensive probation which poses a serious threat or danger to the community, the court shall revoke the *period of intensive probation* and impose a term of imprisonment as authorized by law.

(Emphasis supplied).

¶ 38 In applying statutes, our goal is to ascertain and give effect to the legislative

intent. *Maycock v. Asilomar Dev., Inc.,* 207 Ariz. 495, 500, ¶ 24, 88 P.3d 565, 570 (App. 2004); *State v. Ontiveros,* 206 Ariz. 539, 541, ¶ 8, 81 P.3d 330, 332 (App.2003). We look first to the language of the statutes as the best and most reliable indicator of the statute's meaning. *Ontiveros,* 206 Ariz. at 541, ¶ 8, 81 P.3d at 332. If the statutory language is clear, we do not apply rules of construction. *Maycock,* 207 Ariz. at 500, ¶ 24, 88 P.3d at 570. If it is not clear, one of the rules we do apply is to make sure that all the statutory words are given meaning and not are made superfluous or absurd. *Pinal Vista Props., L.L.C. v. Turnbull,* 208 Ariz. 188, 190, ¶ 10, 91 P.3d 1031, 1033 (App.2004) (citations omitted); *In re Maricopa County Super. Ct. No. MH 2001–001139,* 203 Ariz. 351, 354, ¶ 17, 54 P.3d 380, 383 (App.2002).

¶ 39 The majority contends that the only way the two subsections of § 13–917 can be harmonized so as to make the statute meaningful is that once a petition to revoke probation is filed alleging a felony offense, the trial court must incarcerate the defendant under subsection (B) if it later finds he committed the felony, while at all other times the trial court has discretion under subsection (A) to modify the terms of probation, including removing the defendant from intensive probation. *Supra,* ¶¶ 16, 19–22.

¶ 40 The problem I have with the majority's conclusion is that it makes superfluous the third reference to "intensive" probation in the above-quoted sentence in § 13–917(B). The legislature clearly indicated that if the defendant is on intensive probation at the time the petition to revoke is filed and is still on intensive probation when the trial court finds that he has violated his probation by committing a felony, then "the court shall revoke the *period of intensive probation* and impose a term of imprisonment ...." (Emphasis supplied). The third use of the term "intensive" means that incarceration is required only if a defendant is still on intensive probation at the time the court finds he committed a felony; a court cannot revoke an intensive probation which no longer exists. Under the majority's approach, the sentence would have to be reworded to permit the court to imprison the defendant even if he is

not on intensive probation when the court finds that a felony was committed. The statute would then read,

> If a petition to revoke the period of intensive probation is filed and the court finds that the person has committed an additional felony offense or has violated a condition of intensive probation which poses a serious threat or danger to the community, the court shall revoke the period of intensive probation and impose a term of imprisonment as authorized by law.

¶ 41 Nor do I think my conclusion misstates the legislative intent. Our basic source for determining such intent is the language of the statute itself. The majority contends that the legislative intent, based on the language of § 13–917(B) is that if the probationer commits a felony while on intensive probation, then he must be incarcerated. *Supra,* ¶ 16. That, however, is not quite what the statute says. It provides that such incarceration is required only if and when the court finds that he committed the felony. If for whatever reason the defendant is no longer on intensive probation at the time of that finding, incarceration is not required by the language of the statute. If the legislature intended to require such incarceration regardless of whether the defendant is still on intensive probation, it would have deleted the last use of the term "intensive" as in the theoretical sentence quoted above. The current wording of the statute does not reflect a legislative intent that incarceration is required even if the defendant has been removed from intensive probation after the petition to revoke was filed.

¶ 42 My reading of the statute, finding legislative intent through the words of the legislature, does no violence to the rest of § 13–917. The sentences immediately before and after the key sentence of § 13–917(B) address offenses and other probation violations that are not specifically described as constituting felonies or serious threats or dangers to the community. For less serious probation violations or in situations in which the defendant is no longer on intensive probation, the trial court possesses discretion to revoke probation and/or to incarcerate the defendant. The only exception is when the

defendant is still on intensive probation at the time he is found guilty of the new felony—then the court must incarcerate him. This construction is consistent with § 13–917(A), which gives the trial court discretion to reduce probation at any time.

¶ 43 The majority also contends that its interpretation is consistent with the idea that a specific statute controls over the more general so that the more specific statute (requiring incarceration if a felony is committed while on intensive probation) controls over the rest of § 13–917 (permitting but not requiring incarceration for other probation violations). I agree with the majority's premise, but not its conclusion. The language of the more specific portions of the statute merely provides that if the court finds that the felony was committed while the defendant was on intensive probation, then the court must revoke intensive probation and incarcerate him. The more specific provision applies only when the defendant is still on intensive probation when the court finds that he committed the felony during that same type of probation.

¶ 44 Botkin was placed on intensive probation for a term of seven years. While on intensive probation in 2004, Botkin committed a class six felony offense pursuant to A.R.S. § 13–3406(A)(7), (B)(2). A petition to revoke Botkin's intensive probation was filed a week later. While the petition was pending, the court removed Botkin from intensive probation. Under these circumstances, the legislature did not require the superior court to revoke an intensive probation which no longer existed and incarcerate him upon finding he violated the terms of his previous intensive probation. The court had the discretion to revoke probation and incarcerate Botkin, but did not do so. That was well within the trial court's discretion.

¶ 45 Based on the above, I would affirm the trial court's discretionary decision not to incarcerate Botkin but to continue him on standard probation.