SUPREME COURT OF ARIZONA
En Banc

| | | |
|---|---|---|
| STATE OF ARIZONA, | ) | Arizona Supreme Court |
| | ) | No. CR-08-0299-PR |
| Appellant, | ) | |
| | ) | Court of Appeals |
| v. | ) | Division One |
| | ) | No. 1 CA-CR 07-0083 |
| SEAN WAYNE BOTKIN, | ) | |
| | ) | Maricopa County |
| Appellee. | ) | Superior Court |
| | ) | No. CR2000-016781 |
| | ) | |
| | ) | |
| | ) | **O P I N I O N** |
| _____ | ) | |

Appeal from the Superior Court in Maricopa County
The Honorable Teresa A. Sanders, Judge

**AFFIRMED**

_____

Opinion of the Court of Appeals, Division One
219 Ariz. 466, 200 P.3d 323 (App. 2008)

**VACATED**

_____

ANDREW P. THOMAS, MARICOPA COUNTY ATTORNEY                    Phoenix
     By   David E. Wood, Deputy County Attorney
Attorneys for State of Arizona

OSBORN MALEDON, P.A.                                          Phoenix
     By   Larry A. Hammond
          Timothy J. Eckstein
Attorneys for Sean Wayne Botkin

_____

**H U R W I T Z**, Justice

¶1      If a criminal defendant is eligible for probation, the

superior court may suspend imposition of sentence and "place the

person on intensive probation." A.R.S. § 13-901(A) (Supp. 2008); *see* A.R.S. § 13-913 (2001) (defining "intensive probation" as "a program . . . of highly structured and closely supervised probation which emphasizes the payment of restitution"). Upon notice to the State and any victim, *see* A.R.S. § 13-901(E), the court "may at any time modify the level of supervision of a person granted intensive probation, or may transfer the person to supervised probation or terminate the period of intensive probation," A.R.S. § 13-917(A) (2001).

¶2 At issue in this case is A.R.S. § 13-917(B), which provides in pertinent part as follows:

> If a petition to revoke the period of intensive probation is filed and the court finds that the person has committed an additional felony offense or has violated a condition of intensive probation which poses a serious threat or danger to the community, the court shall revoke the period of intensive probation and impose a term of imprisonment as authorized by law.

The question is whether this provision deprives the superior court of authority to transfer the defendant from intensive to supervised probation after a petition to revoke has been filed but before any finding that the defendant committed the additional felony offense has been made.

**I.**

¶3 On March 9, 2001, Sean Wayne Botkin pleaded guilty to two counts of kidnapping and one count of aggravated assault

2

(the "2000 Offenses") arising from an incident that occurred when he was fourteen years old.  Botkin was placed on intensive probation for seven years on the kidnapping charges and for five years on the aggravated assault charge.  He was incarcerated in the county jail for twelve months as a condition of probation.

¶4        After his release from custody, Botkin allegedly gave four prescription pills to a high school classmate.  He was charged with transfer of prescription drugs (the "2004 Offense"), a class 6 felony.  *See* A.R.S. § 13-3406(A)(7), (B)(2) (Supp. 2005).

¶5        The Adult Probation Department filed a petition to revoke Botkin's intensive probation on the 2000 Offenses.  *See* Ariz. R. Crim. P. 27.6(a) (providing for petition to revoke probation).  In December 2004, while the petition was pending, Botkin entered into a plea agreement stipulating to a term of imprisonment for the 2004 Offense.  In return, the State agreed to dismiss allegations of prior felony convictions and the allegation that the 2004 Offense occurred while Botkin was on probation.

¶6        At a joint change-of-plea and probation violation hearing, the superior court accepted the plea and found that the commission of the 2004 Offense violated Botkin's probation.  At the subsequent sentencing and probation disposition hearing, the court sentenced Botkin to one year in prison for the 2004

3

Offense.  *See* A.R.S. § 13-708(C) (Supp. 2008) (requiring that a defendant convicted of a felony offense while on probation receive not less than the presumptive sentence for that offense).[1]  The court, however, rejected the State's demand that Botkin also be imprisoned for the 2000 Offenses, instead transferring Botkin from intensive to supervised probation.

¶7        The State appealed, arguing that because the superior court had determined that Botkin had committed an additional felony, it was required under § 13-917(B) to revoke intensive probation and imprison Botkin for the 2000 Offenses.  The court of appeals agreed, vacating the order reinstating Botkin on supervised probation for the 2000 Offenses and remanding to the trial court.  *State v. Botkin*, 1 CA-CR 05-0082 (Ariz. App. Feb. 28, 2006) (mem. decision).

¶8        By the time the memorandum decision was issued, Botkin had already served the sentence imposed for the 2004 Offense. After remand, Botkin moved to withdraw his plea to the 2004 Offense, contending that he had not been aware that the plea would subject him to mandatory prison sentences for the 2000 Offenses.  The State did not oppose Botkin's motion, and the

_____

[1]    This provision was previously codified at A.R.S. § 13-604.02(B) (2001).  It was renumbered and amended, without substantive change, as § 13-708(C).  2008 Ariz. Sess. Laws, ch. 301, §§ 17, 32 (2d Reg. Sess.).  This opinion cites to current versions of statutes that have not been materially changed since the time of their application to this case.

4

trial court allowed the plea to be withdrawn, thus vacating the conviction for the 2004 Offense.  Over the State's objection, the court then granted Botkin's motion to reduce the intensive probation imposed for the 2000 Offenses to supervised probation. Botkin later pleaded guilty to the 2004 Offense and was sentenced to time already served.  The court ordered that Botkin continue on supervised probation for the 2000 Offenses.

¶9        The State again appealed.  A divided panel of the court of appeals reversed and remanded.  *State v. Botkin*, 219 Ariz. 466, 472 ¶ 29, 200 P.3d 323, 329 (App. 2008).  Although "presum[ing] that the trial court had good reasons . . . to allow Botkin to continue on probation" after his second plea to the 2004 Offense, *id.* at 468 ¶ 11, 200 P.3d at 325, the majority concluded that § 13-917(B) prohibited the judge from transferring Botkin to supervised probation after the filing of the petition to revoke, *id.* at 470 ¶ 21, 200 P.3d at 327.[2]

¶10       The dissenting judge argued that § 13-917(B) applies only if the defendant is on intensive probation when the court finds he committed an additional felony offense.  *Id.* at 474-75 ¶¶ 40-43, 200 P.3d at 331-32 (Kessler, J., dissenting).  Because

_____
[2]    The majority questioned whether Botkin's guilty plea to the 2004 Offense was "intelligent and voluntary," *see Boykin v. Alabama*, 395 U.S. 238 (1969), because the trial court did not inform him that this plea would require imprisonment for the 2000 Offenses, and therefore remanded for the trial court to address that issue.  *Botkin*, 219 Ariz. at 472 ¶ 27, 200 P.3d at 329.

5

the superior court had vacated Botkin's previous guilty plea to the 2004 Offense before it resolved the petition to revoke, the dissent reasoned that the court retained authority under § 13-917(A) to transfer Botkin to supervised probation for the 2000 Offenses. *Id.* at 475 ¶ 44, 200 P.3d at 332. Botkin's subsequent plea to the 2004 Offense did not trigger § 13-917(B), the dissent concluded, because "a court cannot revoke an intensive probation which no longer exists." *Id.* at 474 ¶ 40, 200 P.3d at 331.

¶**11** Botkin petitioned for review. Although the facts of this case are unusual, we granted review because interpretation of § 13-917(B) is an issue of first impression, *see* Ariz. R. Crim. P. 31.19(c), and Botkin faces a substantial prison sentence under the opinion below. We have jurisdiction under Article 6, Section 5(3) of the Arizona Constitution and A.R.S. § 13-4036 (2001).

**II.**

¶**12** This case involves the intersection of two subsections of A.R.S. § 13-917. Subsection (A) provides that the trial court may transfer a person from intensive to supervised probation "at any time." Subsection (B) directs that "the court shall revoke the period of intensive probation and impose a term of imprisonment" upon the occurrence of certain events.

6

¶13     The State contends that § 13-917(A) only permits the superior court to transfer a person from intensive to supervised probation when no petition to revoke is pending.  Subsection (A), however, contains no such limiting language.  Rather, it allows the trial court to transfer a person from intensive to supervised probation "at any time."  A.R.S. § 13-917(A).  Thus, the State's argument perforce rests entirely on § 13-917(B), which mandates certain consequences when a court finds that a probationer has committed a new felony offense.

¶14     Botkin argues that the consequences mandated by § 13-917(B) – revocation of intensive probation and a mandatory prison term – are not triggered by the filing of the revocation petition alone, but also require a finding that an additional felony was committed, and that § 13-917(A) permits the superior court to modify the level of probation until such a finding is made.   The language of the statute supports Botkin's interpretation.  Subsection (B) applies only when "a petition to revoke the period of intensive probation is filed *and* the court finds that the person has committed an additional felony offense."   A.R.S. § 13-917(B) (emphasis added); *see State v. Getz*, 189 Ariz. 561, 563, 944 P.2d 503, 505 (1997) ("The best and most reliable index of a statute's meaning is its language . . . ." (quoting *In re Pima County Juvenile Appeal No. 74802-2*, 164 Ariz. 25, 33, 790 P.2d 723, 731 (1990))).   The statute

7

requires the concurrence of two events before revocation of intensive probation and a term of imprisonment are mandated. Subsection (B) does not speak to the trial court's ability to reduce the level of supervision *before* it finds a probation violation; rather, it speaks to what the court must do *after* it finds the violation.

¶15 Because § 13-917(A) allows the court to reduce the level of probation at "any time," the statute, read as a whole, requires a term of imprisonment only if the court had not reduced the level of probation before finding the additional felony violation. Given the withdrawal of Botkin's original plea to the 2004 Offense and the superior court's modification of the level of probation before its acceptance of Botkin's second plea to the 2004 Offense, that is precisely what occurred here.

¶16 In effect, the State argues that because Botkin committed the offense while on intensive probation, the consequences in § 13-917(B) are mandated. But the legislature knows well how to provide for consequences that flow from the fact of commission of a crime, as opposed to the date of conviction. Section 13-708(C), for example, requires imprisonment if a probationer is convicted of a second felony offense "that is committed while the person is on probation." In contrast, the consequences mandated in § 13-917(B) are

8

triggered only if the defendant is on intensive probation when the violation is found.  Until then, the court retains authority under § 13-917(A) to transfer the person from intensive to supervised probation.

III.

¶17     The State argues that construing § 13-917(A) to allow a court to transfer a defendant to supervised probation after a petition is filed – but before the court finds the commission of an additional felony offense – renders the contested sentence from § 13-917(B) superfluous.  *See City of Tucson v. Clear Channel Outdoor, Inc.*, 209 Ariz. 544, 552 ¶ 31, 105 P.3d 1163, 1171 (2005) ("Whenever possible, we do not interpret statutes in such a manner as to render a clause superfluous.").  We disagree.  The statute unequivocally instructs the superior court that once it finds that a defendant on intensive probation has committed a new felony, it has no discretion but to revoke the probation and impose a term of imprisonment.

¶18     The State also suggests that unless the opinion below is affirmed, trial judges will render § 13-917(B) ineffectual, by routinely transferring defendants to supervised probation before deciding whether a violation has occurred.  But this assumes that superior court judges can – and will – inevitably reduce the level of probation whenever a petition to revoke is

filed.  We are confident, however, that such occurrences will be rare.

¶19      In almost all cases in which a defendant on intensive probation commits a new felony, the State will promptly petition to revoke intensive probation, and the court will promptly hold a disposition hearing.  It is unlikely that the defendant will have done anything warranting transfer to supervised probation in the period between the alleged violation and the hearing.  Indeed, although § 13-917(A) provides a trial court with discretion to transfer a defendant from intensive to supervised probation, a judge would abuse that discretion by ordering such a transfer after the filing of the revocation petition simply to avoid the consequences mandated by § 13-917(B).  Thus, in most cases, § 13-917(B) will mandate a term of imprisonment when a defendant on intensive probation commits an additional felony offense.

¶20      This, however, is an extraordinary case.  Here, through no fault of the defendant, more than two years passed between the filing of the petition to revoke and the superior court's ultimate finding that Botkin had committed the 2004 Offense.  For some eighteen of those months – from August 2005, when Botkin was released from prison after fully serving his original sentence on the 2004 Offense, until February 2007, when the court accepted his second plea to the 2004 Offense – Botkin

10

was, as the superior court noted, for all intents and purposes on supervised probation. During that period, as the probation department reported, Botkin "maintained full compliance with the conditions of his supervised probation[,] . . . enrolled at Mesa Community College, paid his fine in full, completed all of his community service hours, and remained drug and alcohol free."

¶21    In transferring Botkin to supervised probation, the superior court made clear that it was not reducing the level of probation to avoid application of § 13-917(B), but rather in recognition of Botkin's significant progress during the substantial period since his release from prison. Given the unusual circumstances of this case, we cannot conclude that the court abused its discretion in doing so.[3]

**IV.**

¶22    For the reasons above, we vacate the opinion of the court of appeals and affirm the superior court's order transferring Botkin from intensive to supervised probation.

_____

[3]    The State also relies on A.R.S. § 13-903(D) (2001), which provides that the "running of the period of probation shall cease" upon the filing of a petition to revoke. But this provision has nothing to do with the trial court's power to modify levels of probation under § 13-917(A). Rather, it is designed to prevent a revocation petition from being mooted before it can be adjudicated. *See State v. White*, 115 Ariz. 199, 205, 564 P.2d 888, 894 (1977) (holding that the court lacks authority to revoke probation after period of probation expires).

11

_____
Andrew D. Hurwitz, Justice

CONCURRING:


_____
Ruth V. McGregor, Chief Justice


_____
Rebecca White Berch, Vice Chief Justice


_____
Michael D. Ryan, Justice


_____
W. Scott Bales, Justice